EGAN, Respondent, vs. PREFERRED ACCIDENT INSURANCE
COMPANY OF NEW YORK, Appellant.

*October 16—November 10, 1936.*

130

For the appellant there were briefs by *Geo. H. Gordon, Law & Brody* of La Crosse, and oral argument by *Lawrence J. Brody*.

For the respondent there were briefs by *Higbee & Higbee, Jesse E. Higbee,* and *Otto Bosshard,* all of La Crosse, and oral argument by *Jesse E. Higbee*.

WICKHEM, J.    Plaintiff was a physician practicing his profession in the city of La Crosse.   In May, 1917, he had issued to him from defendant a policy of accident insurance which provided for the payment of indemnities,—

"If such bodily injury shall, from the date of the accident and independently and exclusively of all other causes, directly, continuously and totally disable and prevent the insured from performing any and every kind of duty pertaining to his occupation, and if during the period of such continuance and total disability, such bodily injury shall be the sole and direct cause of any of the losses enumerated in this part."

December 25, 1932, during the course of answering a professional call, plaintiff slipped on an icy surface and, although he did not fall, subjected his back to a severe wrench.   Although in considerable pain, he made the call and after returning to his home treated the injury by applying an electric pad.   It is unnecessary to detail the progress of his difficulty further than to state that ever since the date of the accident he has been wholly incapacitated and unable to attend to his usual duties, which is the basis for a claim for total disability under the accident policy.

Defendant made an investigation and upon findings of its physicians concluded that plaintiff's disability was due to con-

ditions of health rather than exclusively accidental causes, and offered to pay him under a separate health policy also carried with defendant. Plaintiff declined this offer.

The first question is whether there is any evidence to sustain the conclusion of the jury that the accident in question produced total disability independently and exclusively of all other causes. Defendant contends that the record shows plaintiff's total disability to be partly, if not wholly, due to a condition of health, and especially to an arthritic condition, existing in his lower back at the time of the accident. Defendant claims that a sacroiliac sprain or strain suffered in the manner complained of would be wholly cured in from two weeks to three months were it not for contributing causes. Reliance is had upon *Cary v. Preferred Accident Ins. Co.* 127 Wis. 67, 106 N. W. 1055, and *Cretney v. Woodmen Accident Co.* 196 Wis. 29, 219 N. W. 448. In these cases it was held that when at the time of the accident there was an existing disease which, co-operating with the accident, resulted in the injury or death, the accident cannot be considered as the sole cause or as the cause independently of all other causes.

In each of these cases, the court was dealing with the relation to an accident of an active disease. The conclusions there expressed must be considered to have been somewhat modified by what was said in *Herthel v. Time Ins. Co.* 221 Wis. 208, 265 N. W. 575, in which this court stated that:

". . . If a disease or bodily condition exists and an accident occurs, to constitute the accidental means the sole cause of an injury, under policies like the one in suit, it is not necessary that the injury or the results thereof would have been as severe as they were had the disease or bodily condition not existed; but it is sufficient if the accidental means would have solely caused some considerable injury had the disease or bodily condition not existed. But, if no considerable injury at all would have resulted had the insured not been afflicted with the existing disease or condition, the accidental means cannot be considered as the sole cause of the injury."

Applying the doctrine of the *Herthel Case* to this case, in the light of the evidence, we see no reason to disturb the finding of the jury. The medical experts offered by plaintiff gave testimony from which the jury was entitled to conclude that while there were certain abnormalities of growth in the spine of plaintiff, these were the result of advancing years or congenital anomalies, and were not produced by or evidence of an active disease which contributed to plaintiff's present symptoms in co-operation with the accident. It was the view of the plaintiff's experts that the injury resulted in lumbosacral or sacroiliac strain, and that plaintiff's present symptoms and disability are solely referable to the strain. The import of their testimony must be taken to be that the accident "would have solely caused some considerable injury" had plaintiff's spine been in a perfectly normal condition.

Defendant complains that it appears that plaintiff did not furnish the experts with a complete history of certain difficulties with his spine which antedated the injury. However, on the cross-examination, this circumstance was put to plaintiff's principal expert, who, while recognizing the importance of plaintiff's past history as an assistance to diagnosis, adhered to his conclusion based on actual examination that plaintiff was not afflicted with any disease of the spine, and that the physical anomalies which he did have were not contributing causes to his disability.

It is also contended that the court erred in the submission of the cause in that the special verdict did not present to the jury the real controversy. The special verdict was submitted as follows:

"Question 1. Did the plaintiff, Gregory J. Egan, on December 25th, 1932, suffer bodily injury through accidental means? Answer: Yes.

"Question 2. If you answer question number one 'Yes,' then answer this question: Was the plaintiff Gregory J. Egan, thereby totally disabled from performing the usual

duties pertaining to his occupation and profession as a physician and surgeon? Answer: Yes.

"Question 3. If you answer questions one and two both 'Yes,' then answer this question: Did such disability of the plaintiff Gregory J. Egan, result directly from such bodily injury, independent of all other causes? Answer: Yes.

"Question 4. If you answer question three 'Yes,' then answer this question: Did such disability, independent of all causes other than the injury suffered through the accident of December 25th, 1932, continue from the time of such accident up to the time of the commencement of this action in April, 1934. Answer: Yes.

"Question 5. If you answer question four 'No,' then answer this question: What period of time was the plaintiff totally disabled due solely to the accident of December 25th, 1932, independently of all other intervening causes? Answer: ——."

It is contended that the fourth question is misleading; that it inquires whether the disability continued down to the commencement of the action, which was not disputed, and that the words, "independent of all causes," etc., relate to and modify disability. It is contended that the question should have been whether the bodily injury so sustained on December 25, 1932, acting independently and exclusively of all causes whatsoever, produced and continued to produce total disability down to the time of the commencement of the action. Literally, the objection may be well taken, but we are satisfied that the jury could not have been misled to defendant's prejudice by the form of the question.

Objection is also made to the form of question 5. It is claimed that this question should have been preceded by the statement: "If you answer question three 'yes,' and question four 'no,' then answer this question," or, if the present introductory matter was retained, that the question should have been made to read: "What period of time, if any," etc. In its present form it is claimed to assume that there was total disability due solely to the accident, independently of all other intervening causes and to inferentially direct an affirmative

answer to question 3. We think this objection to be without merit. Question 4 was only to be answered in the event that question 3 was answered "yes." Question 5 was only to be answered in case question 4 was answered, so that question 5 could only be answered if and after question 3 was answered "yes." Since the jury did not reach question 5 until and unless question 3 should receive an affirmative answer, it cannot be supposed that the form of question 5 would influence the consideration of question 3. The introductory matter was literally correct, and the form of the question could not have resulted in prejudice to defendant.

Defendant's principal contention upon this appeal is that the court erred in failing to enter an order for the removal of the cause to the federal court. At the time of the commencement of the action, assuming defendant to be liable upon the policy, plaintiff's claim was well under $3,000. The amount due consisted of instalments of indemnity payable under the terms of the policy and was ascertainable with mathematical accuracy at any given time. There was considerable delay in bringing the case to trial, and by that time the accrual of other instalments of indemnity had increased plaintiff's actual claim to $5,610. On the opening day of court, plaintiff moved to amend the *ad damnum* clause so as to demand recovery in the latter sum. Before the impaneling of a jury to try the cause, the attorneys for defendant immediately served upon attorneys for plaintiff notice of application for removal of the cause to the federal court, and promptly filed with the court a petition and bond for removal. The fact of diversity of citizenship at the commencement of the action and at the time of the filing of the petition for removal was properly set forth and is conceded. Defendant contends that immediately upon the granting of plaintiff's motion to amend the complaint and thereby increase the demands of the complaint to an amount in excess of $3,000, defendant became entitled to petition for removal to the fed-

eral court, and that upon the filing of the petition and bond the state court immediately lost jurisdiction. Upon the filing of defendant's petition and bond, plaintiff immediately moved to withdraw his application to amend the complaint, and this motion was granted. Defendant contends, however, that the filing of its petition and bond deprived the state court of jurisdiction even to permit a withdrawal of the amendment. These contentions make it necessary briefly to examine the authorities upon this question.

The filing of a proper petition and bond for removal in a removable case divests the state court of jurisdiction and vests jurisdiction in the federal court. This is true although further acts may be necessary in federal court before that court can properly exercise jurisdiction. *Marshall v. Holmes,* 141 U. S. 589, 12 Sup. Ct. 62; *Madisonville Traction Co. v. St. Bernard Mining Co.* 196 U. S. 239, 25 Sup. Ct. 251; *Anderson v. United Realty Co.* 222 U. S. 164, 32 Sup. Ct. 50; *Steamship Co. v. Tugman,* 106 U. S. 118, 1 Sup. Ct. 58; *Kingston v. American Car & Foundry Co.* (C. C. A.) 55 Fed. (2d) 132; *State Improvement-Development Co. v. Leininger* (D. C.), 226 Fed. 884.

Assuming that the facts set forth by the complaint are such as to make the cause removable, and that a petition and bond for removal is filed in the state court, the state court is without jurisdiction thereafter to permit an amendment of the complaint to delete facts making the cause removable. For example, plaintiff, after the petition and bond for removal are filed, may not avoid removal by amending his complaint to demand a lesser sum although such amendment is allowed by the state court. *Kanouse v. Martin,* 15 How. (56 U. S.) 198; *George Weston Ltd., v. New York Central R. Co.* 115 N. J. Law, 564, 181 Atl. 18. Where the original complaint demands a sum less than that required for removal and plaintiff by amendment subsequently increases the demand to a sum in excess of the statutory requisite, it is the rule, subject to limitations hereafter to be discussed, that defendant may

thereafter file a petition and bond for removal. *Markey v. Chicago, M. & St. P. R. Co.* 171 Iowa, 255, 153 N. W. 1053; *Remington v. Central Pac. R. Co.* 198 U. S. 95, 25 Sup. Ct. 577; *Huskins v. Cincinnati, N. O. &·T. P. R. Co.* (C. C.) 37 Fed. 504, 3 L. R. A. 545.

None of the foregoing rules are seriously questioned here, and all of them appear to be clearly sustained by the authorities. The difficulty arises out of the rule generally stated that a cause is not removable unless it could originally have been brought in the federal court. *Madisonville Traction Co. v. St. Bernard Mining Co., supra; Minnesota v. Northern Securities Co.* 194 U. S. 48, 24 Sup. Ct. 598; *Tennessee v. Union & Planters' Bank,* 152 U. S. 454, 14 Sup. Ct. 654; *Davidson v. Mexican National R. Co.* 157 U. S. 201, 15 Sup. Ct. 563; *Metcalf v. Watertown,* 128 U. S. 586, 9 Sup. Ct. 173.

From the rule as thus stated have proceeded several holdings to the effect that there is no right of removal for diversity of citizenship unless the diversity existed when the suit was brought. *Stevens v. Nichols,* 130 U. S. 230, 9 Sup. Ct. 518; *Kinney v. Columbia Savings & Loan Asso.* 191 U. S. 78, 81, 24 Sup. Ct. 30; *Mattingly v. Northwestern Virginia R. Co.* 158 U. S. 53, 15 Sup. Ct. 725; *Kellam v. Keith,* 144 U. S. 568, 12 Sup. Ct. 922; *Anaconda Copper Mining Co. v. Butte-Balaklava Copper Co.* (D. C.) 200 Fed. 808. In the latter case it is said:

"The rule of those cited by defendant, in so far as removability for diverse citizenship is concerned, is that a case not removable when and as brought may thereafter become in its nature removable, and may then be removed, though the original time to answer or plead has expired. But this presupposes a case that could have been brought as it thereafter was made—wherein the jurisdictional facts as they subsequently appeared were existing facts when the suit was brought. If defendant's contention that a right of removal may 'come into being' after the time for answer has expired means more than this—means that the jurisdictional facts

may come into being after the time to answer has expired, and thereby a right of removal be created—it would seem that the cases cited in support thereof do not sustain it. . . ."

Thus, where removal is sought by reason of diversity of citizenship, it is the rule that in order to entitle defendant to removal, the jurisdictional fact of diversity must have existed at the commencement of the action as well as at the time of filing of the petition. The question is whether the same rule is applicable to the amount in dispute.

The case closest in point is that of *Carrick v. Landman* (C. C. Ala.), 20 Fed. 209. In that case the suit was brought in the state court to recover upon a promissory note in the sum of $350.57. The removal statute at that time set as a prerequisite of removal the requirement that the amount in dispute exceed the sum of $500. There was a delay of about eleven years in bringing the cause to trial, and, in the meantime, accrued interest increased the amount to a sum in excess of $500. There was no amendment of pleadings, but this would seem to be immaterial, since the fact that the greater sum could be recovered without further pleading would not impair the fact that the greater sum was in dispute at the trial. The court held that the conditions present at the time when plaintiff invoked the jurisdiction of the state court controlled upon the question whether the suit was removable from the state court to the circuit court of the United States. The court cites with approval Spear, Law of Federal Judiciary, page 462:

"The absence of this condition is fatal to the right of removal as given by statute. The right depends upon a statute; and the facts as they existed, when the suit was commenced in the state court, in respect to the sum or value in dispute, must determine whether this particular condition of the statute is present."

The court considered that the rule requiring the existence of diversity of citizenship at the time when the suit was begun

in the state court compelled the same conclusion with respect to the amount in dispute. See also *La Montagne v. T. W. Harvey Lumber Co.* (C. C.) 44 Fed. 645.

On the other hand, as heretofore stated, it is held in several cases that where plaintiff amends his petition or complaint to increase his damages to a sum in excess of the jurisdictional amount, defendant may petition for removal. *Markey v. Chicago, M. & St. P. R. Co.* and *Huskins v. Cincinnati, N. O. & T. P. R. Co., supra.*

The two cases above cited, however, involve tort actions for unliquidated damages, and the facts at the commencement of each action would have warranted any demand that the plaintiff in his judgment might have elected to make. It is evident that a plaintiff in such a case may not defeat defendant's right to removal by demanding in his original complaint a sum less than the minimum for removal and later amending his complaint to claim his full damages. The present case, however, is quite different. Here the damages are liquidated and mathematically ascertainable, and at the commencement of the action plaintiff did not demand, and the record shows that he could not have demanded, a sum in excess of that set forth in his complaint. The increased amount demanded by the amended complaint accrued after the commencement of the action, and while the matter is not free from difficulty, we conclude that the cases above cited to the effect that the jurisdictional facts must exist at the time of the commencement of the action are applicable and that the cause was not removable.

*By the Court.*—Judgment affirmed.

FRITZ, J., dissents.