[Civ. No. 426.   Fifth Dist.   Feb. 11, 1965.]

SALVATORE F. ALESSANDRO, Plaintiff and Appellant, v. MASSACHUSETTS CASUALTY INSURANCE COMPANY, Defendant and Respondent.

William O. Burt for Plaintiff and Appellant.

Osterman & Soll for Defendant and Respondent.

BROWN (R. M.), J.—Appellant appeals from a defense judgment of the court following a nonjury trial on the merits in his action against the respondent for breach of a contract of disability insurance.

The policy providing for disability benefits was issued by the respondent in 1956. The pertinent terms of the policy are as follows:

"ACCIDENT TOTAL DISABILITY

"If the Insured suffers such accidental bodily injury resulting in a total disability as defined in miscellaneous provision "E", the Company will pay the monthly indemnity provided by this policy during the continuance of such total disability . . . .

"ACCIDENT PARTIAL DISABILITY

"If the Insured suffers such accidental bodily injury resulting in a partial disability as defined in miscellaneous provision "E", the Company will pay indemnity at the rate of one-half of the monthly indemnity provided by this policy for a period not to exceed six months during any continuous disability . . . .

"SICKNESS TOTAL DISABILITY

"If the Insured suffers such sickness resulting in a total disability as defined in miscellaneous provision "E", and the total disability commences while this policy is in force, the Company will pay the monthly indemnity provided by this policy during the continuance of such total disability for a period not to exceed 24 consecutive months . . . ."

"MISCELLANEOUS PROVISIONS

" . . . . . . . . . . . . . .

"E. The term 'total disability' whenever used in this policy shall mean inability to engage in any part of the duties of the Insured's regular occupation. The term 'partial disability' whenever used in this policy shall mean ability of the Insured to perform one or more but not all of the duties of his occupation."

On November 16, 1958, appellant suffered a disability, the nature, extent and duration of which is the subject of this controversy. Appellant was paid disability benefits from December 29, 1958, to and including January 6, 1960, at the rate of $200 per month. After termination of the benefits the appellant commenced this action in two counts based on breach of contract and declaratory relief, while respondent resisted and cross-complained on the theory of fraud and deceit to recover the amount of benefits paid. Respondent was unsuccessful on its cross-complaint but does not appeal from the judgment. However, appellant appeals from the judgment in favor of the respondent on his complaint.

Appellant's position is that he is entitled to further benefits for total disability caused by accidental bodily injury, while respondent's position is that any disability suffered by appellant was caused by sickness, and falls under the sickness benefits provisions of the policy.

At the time of the alleged injury the appellant was, and for the previous 16 years had been the owner and operator of a business the general purpose of which was the repair and maintenance of all types of refrigeration and air conditioning

equipment. This necessitated the replacement of worn or burned-out parts, reconditioning the same, repairing leaks, recharging with gas, replacement of motors and incidental related duties. Though he had in prior years employed as many as 14 employees, at the time of the occurrence of the injury and for three years prior to that time he did all the work himself. This type of refrigerating equipment is generally located in corners or in places which are difficult to reach, so that the workmen must reach in with an awkward or unnatural position. On the day in question the appellant was engaged in repairing a refrigerator walk-in box which was sunken about 1 foot in the ground. Sitting on a ledge formed by the ground, it was necessary to bend forward in an awkward position to replace a control. He was not doing any lifting at the time, nor was he struck on the back in any way, nor did he experience any external force on any part of his body. When he tried to straighten up he felt as though his body from the waist down was paralyzed and experienced pain radiating from his back to the left leg. After some difficulty, he was able to drive home and get into bed. His left leg felt as though it was completely paralyzed and he was in pain. He was unable to get an appointment with his doctor until December 2, during which time he stayed in bed. Appellant rejected the doctor's recommendation for immediate surgery for a herniated disc. He was then under the care of an osteopath for the next six months and treated by manipulation and exercises. Then upon recommendation of physicians at a university clinic, he remained in bed at his home for about three months. For the next three months he was intermittently confined to his bed. Thereafter, for a period of nine months he wore a back brace.

In June 1960 he sold his business to a Mr. Don Fields who had come to work for him in January 1960, and in May 1961 the appellant obtained a position teaching refrigeration and air conditioning at a school in Chino.

In November 1959 the appellant was under motion picture surveillance of a detective agency and upon respondent's receiving the results of the motion pictures, the disability payments were discontinued on January 6, 1960, and thereafter this action was filed.

According to the policy, it is clear that the liability of respondent to the appellant depends on (1) the cause of disability, whether due to accidental bodily injury or sickness, illness or disease; (2) the extent of the disability, whether

partial or total by policy definition; and (3) the duration of the disability.

The trial judge found, in pertinent part, that the appellant did not suffer an accidental bodily injury on November 16, 1958 (Finding No. 6); that on November 16, 1950, and for several years preceding November 16, 1958, the appellant was suffering from an illness known as degenerative intervertebral disc disease of the lumbar spine (Finding No. 7); and that any disability suffered by appellant on November 16, 1958, and thereafter, up to and including May 2, 1961, was proximately caused by, and was the direct result of the said preexisting sickness from which he was then suffering (Finding No. 8); and that it was not true that he became totally disabled or was continuously disabled from November 16, 1958, to May 2, 1961, or that he had been damaged. The conclusions of law were that the respondent was entitled to judgment, and judgment was entered accordingly.

With some difficulty we have concluded that appellant's claim that this was an accident is incorrect. The definition of the word "accident" within the meaning of insurance law is discussed in volume 10, Couch on Insurance 2d, and the following quotations therefrom are pertinent:

Section 41:18, entitled *Particular definitions of "accidental,"* recites as follows:

" 'Accidental' has been variously defined as —

"—'happening by chance or unexpectedly taking place not according to the usual course of things; fortuitous; befalling by chance out of the regular course of things; . . .'

"—'happening by chance; unexpectedly taking place; not according to the usual course of things or not as expected.'

". . . . . . . . . . . .

"An accidental bodily injury is a localized abnormal condition of the living body directly and contemporaneously caused by accident."

Section 41:20, entitled *Accidental occurrence as including force or violence,* recites as follows: "Some element of force or violence is generally present in an accidental occurrence and the concept may therefore be defined in terms of force. . . ."

Section 41:24, entitled *Voluntary act causing foreseeable harm,* recites as follows: "Where the harm which befalls the insured is a reasonable or probable consequence of his volitional act, the harm, by definition, cannot be deemed accidental.

"To illustrate, if a person suffering from weakness or disease subjects himself to conditions which would not in-

juriously affect persons in ordinary health, but which are dangerous to him, and injury results, the cause is not accidental. . . .''

The problem of whether the harm sustained by the appellant was the result of *accidental bodily injury* covered under the accident provisions of the insurance policy in question or *disease, illness or sickness* covered under the sickness provision of said policy must be considered in terms of whether the accident or the disease process is the proximate cause of the harm or disability.

If no considerable injury at all would have resulted had the appellant not been afflicted with the existing disease or condition, then the accident could not be considered the proximate cause of the harm, but rather the disease must be so considered. (*Herthel* v. *Time Ins. Co.*, 221 Wis. 208 [265 N.W. 575]; *Egan* v. *Preferred Acc. Ins. Co. of New York*, 223 Wis. 129 [269 N.W. 667, 107 A.L.R. 1107].)

The word ''accident'' in the frame of reference of insurance policies, as defined by the case law of California, is discussed by Mr. Justice Traynor in the case of *Geddes & Smith, Inc.* v. *St. Paul Mercury Indemnity Co.*, 51 Cal.2d 558, at page 563 [334 P.2d 881], as follows:

''No all-inclusive definition of the word 'accident' can be given. It has been defined 'as ''a casualty—something out of the usual course of events and which happens suddenly and unexpectedly and without design of the person injured.'' (*Rock* v. *Travelers Ins. Co.*, 172 Cal. 462, 465 [156 P. 1029, L.R.A.1916E 1196]; *Richards* v. *Travelers Ins. Co.*, 89 Cal. 170, 175 [26 P. 762, 23 Am.St.Rep. 455].)' (*Zuckerman* v. *Underwriters at Lloyd's*, 42 Cal.2d 460, 473 [267 P.2d 777].) It ' ''includes *any event which takes place without the foresight or expectation of the person acted upon or affected by the event.*'' ' (*Richards* v. *Travelers Ins. Co.*, 89 Cal. 170, 176 [26 P. 762, 23 Am.St.Rep. 455]; see also *Ritchie* v. *Anchor Casualty Co.*, 135 Cal.App.2d 245, 252-253 [286 P.2d 1000]; *Moore* v. *Fidelity & Cas. Co.*, 140 Cal.App.2d Supp. 967, 971 [295 P.2d 154].)''

This definition has been used in many cases in this jurisdiction where the word ''accident'' is found in a policy without any qualifying phrase such as ''accidental means'' or ''external, violent, and accidental means.'' (*Ritchie* v. *Anchor Casualty Co.*, 135 Cal.App.2d 245, 252-253 [286 P.2d 1000]; *Cametal Corp.* v. *National Auto. & Cas. Ins. Co.*, 189 Cal. App.2d Supp. 831, 833 [11 Cal.Rptr. 280]; *Capachi* v. *Glens*

*Falls Ins. Co.,* 215 Cal.App.2d Supp. 843, 846-847 [30 Cal. Rptr. 323]; *Maxon* v. *Security Ins. Co.,* 214 Cal.App.2d 603, 612 [29 Cal.Rptr. 586].) ▉ A brief definition formulated by the court in the case of *Hyer* v. *Inter-Insurance Exchange etc. of So. Cal.,* 77 Cal.App. 343, 348 [246 P. 1055], quoted with approval in the recent case of *Maxon* v. *Security Ins. Co., supra,* at page 612, is: ''It is an 'occurrence which produces hurt or injury.' ''

▉ In the instant case there is no evidence of falling, slipping, overexertion, or of any external force striking the body of the appellant. He was doing his usual work, in a usual way, albeit in an awkward position, and was adjusting a control, while using a pair of pliers. There was nothing outside ''the usual course of events'' which happened '' 'suddenly and unexpectedly without any design of the' '' appellant (*Rock* v. *Travelers' Ins. Co.,* 172 Cal. 462, 465 [156 P. 1029, L.R.A.1916E 1196]) except the result, that is, the fact that the appellant could not immediately straighten up and was subsequently disabled. On the other hand, the record discloses that the appellant was unquestionably suffering from a degenerative intervertebral disc disease and had a long history of health problems with his back. Dr. Bingham, an orthopedic surgeon, testified that the appellant stated to him that he had had dull backaches for a number of years prior to his examination in April 1959. A report of the U.C.L.A. Medical Center, admitted by stipulation, indicated that the appellant had stated that ''for the past four or five years he had noted an occasional lumbar pain after a heavy days labor.'' Other medical testimony showed that the appellant had complained of and been treated for back and hip pain from time to time from 1950 to 1956. Thus, though the appellant may not have known the cause of his back pain or the ultimate result, he knew for a period of eight years that he had a troublesome back.

Even the appellant's own medical expert testified that his condition was consistent with an instability of the back, and instability of the disc, and that an intervertebral disc disease process could give rise to the symptoms of which the appellant complained.

An orthopedic surgeon produced by defendant, Dr. Crowe, testified that after examination of the current X-rays and appellant's past medical history and X-rays, the changes present in the new X-rays were consistent with a degenerative process of the intervertebral disc, that the appellant had

suffered a herniation of the fourth intervertebral disc as a result of a degenerative disease. He also explained that this disease advances to a point where the herniation can occur with a very simple normal movement, without any accident, injury, blow or fall, such as a person who ''just leaned over to pick up his handkerchief and when he got to that point the disc extruded.''

Dr. Bingham also testified that the appellant's condition was a temporary aggravation of a condition of arthritis, that he found evidence of a degenerative intervertebral disc disease, that such a disease is insidious in onset, coming on slowly over a period of many years; that this degenerative disease frequently progresses to a point where the disc protrudes and impinges upon a nerve; that the disease process is the proximate cause of the appellant's disability and that but for the disease process, the appellant would not have suffered any disability or any ruptured disc as a consequence of the events of November 16, 1958.

Any conflicts in the testimony of the medical expert witnesses were resolved by the trial court in favor of the respondent, as it had a right to do. (*City of Carlsbad* v. *Wight*, 221 Cal. App.2d 756, 763 [34 Cal.Rptr. 820].) █ The burden of proof is upon the plaintiff to establish that his disability occurred as a result of an ''accidental bodily injury'' within the meaning of that term as used in the policy (*Zuckerman* v. *Underwriters at Lloyd's*, 42 Cal.2d 460, 472 [267 P.2d 777]; *Kellner* v. *Travelers Ins. Co.*, 180 Cal. 326, 329-330 [181 P. 61]). █ The record does not contain any facts descriptive of an accidental occurrence, but to the contrary, there is substantial evidence that the injury was the end result of a long existing degenerative disease. The finding of the trial court that the appellant's disability was caused by sickness is supported by substantial evidence.

Under the terms of the policy, appellant was entitled to sickness benefits only if he was totally disabled, no provision for such benefits being made for partial disability. He was fully paid to January 6, 1960. Respondent's cross-action seeking to recover the amount paid was determined adversely to it in the trial court and that judgment is now final. The extent of appellant's disability for the period of time that benefits were paid is therefore of no concern to this court. █ The problem here is whether the trial court's determination that appellant was not totally disabled from and after January 6, 1960, so as to entitle him to sickness disability

payments for the remainder of the 24-month period specified by the policy is supported by substantial evidence. ■ Ordinarily the question of what amounts to total disability is one of fact and if the finding of the trial court is supported by substantial evidence, it will not be disturbed upon appeal. (*Erreca* v. *Western States Life Ins. Co.*, 19 Cal.2d 388, 397 [121 P.2d 689, 141 A.L.R. 68]; *Cuchian* v. *Metropolitan Life Ins. Co.*, 103 Cal.App.2d 760, 765 [230 P.2d 381]; *Wright* v. *Prudential Ins. Co.*, 27 Cal.App.2d 195, 216 [80 P.2d 752].)

■ The crucial question then, is whether the evidence was sufficient to show that, on January 6, 1960 (date to which benefits were fully paid), the appellant was able "to perform the substantial and material acts necessary to the prosecution" of his business. The pictures taken by the investigator showed plaintiff driving an automobile, reaching, bending, walking, throwing, climbing up two or three steps, helping an assistant load an apparently heavy water cooler unit into a pickup, all in an apparently normal manner. In addition to servicing and maintaining refrigeration and air conditioning equipment, appellant testified that he sold replacement refrigeration equipment. Obviously he managed the business. He continued to own and operate his business to June 1960. During the period from the date of the disability to the date of sale appellant hired help but supervised and managed the business. Dr. Yamshon, the appellant's medical expert, testified that appellant could supervise his business, demonstrate equipment if he did not lift it, and make replacement sales; that during the acute phases of appellant's condition he probably could not handle any weight, but towards the latter part of it, he could handle up to 25 pounds. Dr. Harold Crowe, after the film was rerun for his benefit, testified that, in his opinion, the appellant was not disabled from the period November 16, 1958, to May 2, 1961, from doing physical labor which would involve lifting, bending and handling heavy objects. This evidence, taken together, is sufficient to sustain the trial court's determination and finding that plaintiff was not totally disabled.

■ The language of Mr. Justice Vallee in *Overton* v. *Vita-Food Corp.*, 94 Cal.App.2d 367, 370 [210 P.2d 757], is directly pertinent: "With rhythmic regularity it is necessary for us to say that where the findings are attacked for insufficiency of the evidence, our power begins and ends with a determination as to whether there is *any* substantial evidence

212

to support them; that we have no power to judge of the effect or value of the evidence, to weigh the evidence, to consider the credibility of the witnesses, or to resolve conflicts in the evidence or in the reasonable inferences that may be drawn therefrom.''

The judgment is affirmed.

Conley, P. J., and Stone, J., concurred.