**FITZ, INC. d/b/a Handmade Furniture Co., and Up Against the Wall, Plaintiffs,**

v.

**RALPH WILSON PLASTICS COMPANY, and Premark International Inc., Defendants.**

No. Civ. 94–6017.

United States District Court, D. New Jersey, Camden Vicinage Division.

March 12, 1999.

Peter L. Masnik, Kalikman and Masnik, Haddonfield, NJ, for Fitz, Inc. and Up Against the Wall.

James John Ferrelli, Duane Morris & Heckscher, Cherry Hill, NJ, for Ralph, Wilson Plastics Company and Premark International, Inc.

**OPINION**

ROSEN, United States Magistrate Judge.

## I. INTRODUCTION

Presently before this court is the motion of Duane, Morris & Heckscher, LLP, counsel for the defendants, Ralph Wilson Plastics Company and Premark International Inc., to compel additional deposition testimony by Julio Fernandez, one of plaintiff's experts or, in the alternative, to preclude him from testifying as plaintiffs' expert, pursuant to Fed. R.Civ.P. 26. After careful consideration of the parties' submissions; and having heard argument on November 16, 1998 and February 19, 1999; and for the reasons noted below, the defendants' motion to compel additional deposition testimony by Julio Fernandez, one of plaintiff's experts or, in the alternative, to preclude him from testifying

as plaintiffs' expert, pursuant to Fed.R.Civ.P. 26. shall be **DENIED.**

## II. FACTUAL BACKGROUND

Plaintiff Fitz, Inc., a furniture and cabinet maker, used an adhesive product manufactured and marketed by Defendant Ralph Wilson Plastics Company (hereinafter "Ralph Wilson") and its parent company, Premark International, Inc. (hereinafter "Premark"). The adhesive product, Lokweld #1055 and #1056, was used to bond a laminate on to such items as kitchen cabinets and counters in residential and commercial buildings. (Complaint ¶ 26.) The plaintiff allegedly used this product between 1987 and 1992. (Complaint ¶ 27.) In 1993, the defendants ceased manufacture of the adhesive. The plaintiff asserts that some time after installation, the laminates begin to peel from applied surfaces, causing damage to the furniture. The plaintiff contends that this delamination occurred because of inherent defects in the adhesive. (Complaint ¶¶ 37 to 41.) The plaintiff further asserts that by 1988 the defendants knew or should have known of the adhesive's defects, and thus should have taken preventive measures or altered its marketing to eliminate the problems caused by the adhesive. (Complaint ¶¶ 52 to 56.)

In March 1993, the defendants established a formal resolution program for delamination problems associated with Lokweld 1055 and 1056. (Complaint ¶ 60.) The plaintiff, however, asserts that through the resolution program the defendants' representatives unfairly delayed the administration of the claims and attempted to obtain settlements by asserting that the delamination was caused by misapplication and not by a defect in the adhesive. (Complaint ¶¶ 61 to 68.)

On November 9, 1994, Plaintiff Fitz, Inc. filed a putative class action in New Jersey Superior Court alleging that the defendants manufactured and marketed faulty laminate adhesive. The plaintiff asserts that the class—"all persons or entities who purchased the Lokweld adhesives at issue from distributors of Ralph Wilson products for use in installing interior laminates in residential and commercial locations"—comprises thousands of persons and entities throughout

New Jersey and the United States. (Complaint ¶¶ 8–9.) The plaintiff seeks damages for the defendants' alleged breached of express warranties (Count I), implied warranties of merchantability and fitness for a particular purpose (Count II), violation of the New Jersey Consumer Fraud Act, N.J.S.A. 56:8–1, et seq., (Count III) and other similar acts in other states on behalf of the class (Count IV), as well as fraudulent concealment (Count V).

The defendants removed the action to this court based upon diversity jurisdiction, 28 U.S.C. § 1332. The defendants thereafter filed a motion to dismiss the complaint, which the Honorable Joseph H. Rodriguez denied by Order filed December 20, 1995. In the December 20, 1996 Order, Judge Rodriguez also considered the plaintiff's application for class certification, which was denied without prejudice. See James Fitz–Randolph, et al. v. Ralph Wilson Plastics Company, et al., Civ. No. 94–6017, Order Filed December 20, 1996, at 12 to 17.

Currently at issue is plaintiffs' use of Julio Fernandez as an adhesives expert. During Mr. Fernandez's three-day deposition,[1] the defendants asked him questions relating to the basis for his opinions, mainly his knowledge and experience in formulating, developing, and testing contact adhesives, acquired while employed at LePage, a division of National Starch, which was purchased by, and became a division of Henkel Canada Ltd. (hereinafter "Henkel"). Defendants' Brief in Support of their Motion to Compel Deposition Testimony by Julio Fernandez, One of Plaintiffs' Experts or in the Alternative, To Preclude Him From Acting as Plaintiffs' Expert (hereinafter "Defs.' Br." at 1.) While Mr. Fernandez admitted that his opinions were based in part upon his experience at Henkel (March 18, 1998 dep. tr. at 54; May 21, 1998 dep. tr. at 55–56), the defendants claim that Mr. Fernandez did not give specific enough details about that experience to provide a basis for the opinions which he intends to offer at trial.

Mr. Fernandez explained to the defendants that a confidentiality agreement with his former employer, Henkel, precluded him from answering their questions with specific details regarding confidential information such as adhesive formulations or developmental methodologies. (See Decl. of Julio Fernandez ¶¶ 7–8; Pls.' Opp'n at Exhibit "D".) Defendants now seek to compel Mr. Fernandez to answer these questions, or to alternatively preclude him from acting as plaintiffs' expert pursuant to Fed.R.Civ.P. 26.

Specifically, the defendants seek the basis for Mr. Fernandez's opinion on the cause of Lokweld 1055's failures, and the basis for his criticism of Wilson's art testing protocols and formulation of Lokweld 1055, including information pertaining to adhesives formulas that he formulated, tested or developed, and testing procedures used at Henkel. (Defs.' Br. at 2–6.) Although Mr. Fernandez explained during his deposition that the confidentiality agreement with Henkel did not allow him to reveal confidential proprietary information of Henkel to any third party, defendants claim that his refusal to specifically explain what he did at Henkel "is fatal to his ability to testify as an expert pursuant to Rule 26." (Defs.' Br. at 6.)

To the contrary, plaintiffs' argue that Mr. Fernandez fully testified regarding his qualifications, prior work experience, opinions, and the bases thereof. Plaintiffs claim that there were only two types of information which Mr. Fernandez did not divulge during his deposition: (1) the exact formulas of adhesives that he developed while at Henkel, and (2) the test protocols that he used when he worked at Henkel. This information, according to plaintiffs, is irrelevant and does not form the basis of Mr. Fernandez's opinions in his expert reports, as he did not compare the formulas or testing methods of Ralph Wilson with those of Henkel, but rather relied on Ralph Wilson's own scientific data and literature. Plaintiffs' Opposition to Defendants' Motion to Compel Deposition Testimony By Julio Fernandez, One of Plaintiffs' Experts, Or, in the Alternative, To Pre-

---

1. The defendants deposed Julio Fernandez on March 18 and 19, and May 21, 1998. (Decl. of Julio Fernandez ¶ 3.)

clude Him From Acting as Plaintiffs' Expert (hereinafter "Pls.' Opp'n" at 2–3.)

Furthermore, the plaintiffs argue that to preclude Mr. Fernandez as an expert would be severely prejudicial in light of the cost that plaintiffs have incurred in retaining him for two years to conduct in-depth analysis. In support of their position, plaintiffs state the following:

[Mr. Fernandez] has conducted substantial research and analysis regarding Lokweld, he has written two fifty-page reports, he has offered three days of deposition testimony, and he will be an invaluable witness for plaintiffs at trial. Also, given his credentials, Mr. Fernandez is one of the premiere adhesives experts in North America. At this advanced stage of the litigation, after expert discovery had been completed, Mr. Fernandez could not be replaced as an expert.

(Pls.' Opp'n at 20.) Therefore, when asked by the court at the second oral argument, whether plaintiffs would consider hiring another expert, counsel for the plaintiffs stated that they were not willing do so.

Defendants noted that Mr. Fernandez should have advised his former employer about his involvement in this case and should have gotten permission as required by his confidentiality agreement before his presentation by plaintiffs as their expert witness. At the first oral argument of this motion, the defendants suggested that in order to avoid Mr. Fernandez's violation of the confidentiality agreement, he should obtain permission from Henkel to discuss his experience.

In an effort to resolve this issue, the court directed the defendants to contact Henkel to ascertain it's position on these issues. When counsel for Henkel appeared at the second oral argument to state its position, it became clear that not only was Mr. Fernandez prohibited from providing any confidential or proprietary information to the parties, but that to some extent, his testimony had already "let the cat out of the bag." Significantly, counsel for Henkel stated that she did not seek to prevent Mr. Fernandez from testifying at trial, but expressed a desire to be present in future court proceedings to protect her client's position.

## III. DEFENDANTS' MOTION TO COMPEL FURTHER DEPOSITION TESTIMONY OF PLAINTIFFS' EXPERT, OR TO PRECLUDE HIM FROM ACTING AS PLAINTIFFS' EXPERT[2]

### A. Disclosures required under Rule 26(a)

■ The disclosure of expert testimony is governed by Fed.R.Civ.P. 26(a)(2)(B), which states in relevant part:

Except as otherwise stipulated or directed by the court, this disclosure shall, with respect to a witness who is retained or specially employed to provide expert testimony in the case or whose duties as an employee of the party regularly involve giving expert testimony, be accompanied by a written report prepared and signed by the witness. The report shall contain a complete statement of all opinions to be expressed and the *basis and reasons therefor; the data or other information considered by the witness in forming the opinions;* any exhibits to be used as a summary of or support for the opinions; the *qualifications of the witness,* including a list of all publications authored by the witness within the preceding ten years; compensation to be paid for the study and testimony; and a listing of any other cases in which the witness has testified as an expert at trial or by deposition within the preceding four years.

Fed.R.Civ.P. 26(a)(2)(B) (emphasis added). The purpose for "requiring expert reports is 'the elimination of unfair surprise to the opposing party and the conservation of resources.'" *Reed v. Binder,* 165 F.R.D. 424,

---

**2.** Although the defendants' motion does not constitute a direct challenge to Mr. Fernandez's expert opinion under *Daubert v. Merrell Dow Pharmaceuticals,* 509 U.S. 579, 113 S.Ct. 2786, 125 L.Ed.2d 469 (1993), there lies great potential for a collision with this issue at trial. While the defendants currently seek to delve deeper into the basis for plaintiffs' expert's opinions, the issue of whether his background and experience qualify him as an expert to make such opinions is closely related and will no doubt be a subject of motions *in limine.*

429 (D.N.J.1996) (quoting *Sylla–Sawdon v. Uniroyal Goodrich Tire Co.*, 47 F.3d 277, 284 (8th Cir.), *cert. denied*, 516 U.S. 822, 116 S.Ct. 84, 133 L.Ed.2d 42 (1995)). The requirements of this provision of the Federal Rules of Civil Procedure [3] assist the court in "making rulings limiting or restricting expert testimony[.]" *Id.* at 429 n. 9.

■ Potential sanctions for violation of Fed.R.Civ.P. 26(a)(2)(B) may be severe given that "[n]othing causes greater prejudice than to have to guess how and why an adversarial expert reached his or her conclusion." *Reed*, 165 F.R.D. at 430. In order to exclude expert testimony, the opposing party must be prejudiced. *Lithuanian Commerce Corp. v. Sara Lee Hosiery*, 177 F.R.D. 245, 254 (D.N.J.1997), *vacated in part, on other grounds*, 179 F.R.D. 450 (D.N.J.1998); *ABB Air Preheater Inc. v. Regenerative Environmental Equipment Co.*, 167 F.R.D. 668 (D.N.J.1996). Rule 37(c)(1), Fed.R.Civ.P., providing for the imposition of mandatory sanctions upon failure to comply with Rule 26, states:

> A party without substantial justification fails to disclose information required by Rule 26(a) or 26(e)(1) shall not, unless such failure is harmless, be permitted to use as evidence at a trial, at a hearing, or on a motion any witness or information not so disclosed. In addition to or in lieu of this sanction, the court, on motion and after affording an opportunity to be heard, may impose other appropriate sanctions.

Failure to comply with Rule 26 regarding expert witnesses is only harmless when " 'there is no prejudice to the party entitled to disclosure.' " *Reed*, 165 F.R.D. at 430 (quoting *Nguyen v. IBP Inc.*, 162 F.R.D. 675, 680 (D.Kan.1995)).

■ Under Rule 37(c)(1), the decision to exclude an expert report for failure to comply with Rule 26 is within the discretion of the trial court. *Newman v. GHS Osteopathic Inc.*, 60 F.3d 153, 156 (3d Cir.1995). In *Reed*, the court struck the testimony of a series of expert witnesses whose reports failed to comply with the standards of Fed.R.Civ.P. 26(a)(2)(B). The proposed experts had failed to submit information regarding compensation, publication, prior testimony, documents relied on, and a sufficient basis for their testimony. *Reed*, 165 F.R.D. at 429–30. Consequently, the court stated that these reports were "not sufficiently complete and in compliance with the rule so that plaintiffs would not be surprised." *Id.* at 430. In *Hagans v. Henry Weber Aircraft Inc.*, 852 F.2d 60 (3rd Cir.1988), the court upheld the exclusion of expert testimony for failure to disclose, in a timely manner, a "flight test" as a basis for expected testimony, contrary to a discovery order.

■ However, the Third Circuit has noted its "aversion, absent extreme circumstances, to the exclusion of crucial evidence." *ABB Air Preheater Inc.*, 167 F.R.D. at 673; *see also In Re Paoli Railroad Yard PCB Litigation*, 35 F.3d 717, 792–793 (3d Cir.1994) (overturning district court's decision to exclude expert testimony where prejudice was "extremely minimal"), *cert. denied*, 513 U.S. 1190, 115 S.Ct. 1253, 131 L.Ed.2d 134 (1995). Indeed, exclusion of evidence is a severe sanction and is therefore often inappropriate unless the failure to disclose or supplement is in bad faith or the resultant prejudice to the opposing party cannot be cured because, for example, use of the evidence is "imminent or in progress." *ABB Air Preheater, Inc.* 167 F.R.D. at 671–72. *See also Asia Strategic Investment Alliances Ltd. v. General Electric Capital Services, Inc.*, No. 95–2479–GTV 1997 WL 122568, at *6 (D.Kan. March 11, 1997) for a similar discussion on the hesitance of a court to exclude evidence based upon a Rule 26 violation.

### B. ANALYSIS

This court shall analyze the basis of Mr. Fernandez's opinion and his qualifications as set forth in his three-day deposition and expert report in accordance with the law set forth above. The court is compelled to de-

---

**3.** The requirements include: 1) a complete statement of all opinions to be expressed; 2) data and information considered by the expert; 3) any exhibits to be used; 4) qualifications of the expert, including publications for the past ten years; 5) compensation; and 6) a list of cases in which the expert has testified over the past four years. *Reed,* 165 F.R.D. at 428–429.

termine whether Mr. Fernandez meets the requirements imposed by Rule 26.

**Julio Fernandez**

Julio Fernandez, plaintiffs' proposed adhesives expert, in his three-day deposition and two expert reports, each approximately fifty pages, described his qualifications, compensation, prior work experience, and set forth his opinion as to the causes for the failure of Lokweld 1055 and criticisms of the defendants' experts' opinions. The expert reports include a list of materials, including technical and scientific sources, that he considered in rendering his opinion. (Pls.' Opp'n at Exhibit "B", Exhibit "C", Exhibits "E", "F", and "G".)

### 1. Background and area of expertise

Mr. Fernandez's has an extensive background in adhesives. He received a Bachelor of Science degree in Chemistry from McGill University, and took several post graduate courses in chemical and adhesive related sciences. (Pls.' Opp'n at Exhibit "B", pp. 3–4.) Mr. Fernandez is currently a private consultant in adhesives for the Adhesium Corporation and previously worked at LePage, Ltd./National Starch/Henkel as an Adhesives Chemist from 1958–1965, Technical Director of adhesive R & D from 1965–1972, Technical Vice President from 1972–1995, and Corporate Development Vice President from 1995–1996. (Pls.' Opp'n at Exhibit "B", pp. 3–4.) Mr. Fernandez has conducted considerable research in the area of adhesives, has chaired the ASTM task force on contact adhesives and the ASTM research subcommittee on adhesives, has written articles on adhesives, and is affiliated with several professional adhesive organizations. (Pls.' Opp'n at Exhibit "B", p. 4.)

### 2. Scope of expert opinion and data relied upon

Mr. Fernandez examined the defendants' development and testing of Lokweld 1055 and Lokweld 1056, in order to determine the causes of Lokweld's alleged failures. In his expert reports, Mr. Fernandez explains the materials he studied in reaching his opinion. His first expert report, dated December 5, 1997, details his explanations for the failures of Lokweld 1055/1056, relating to their molecular composition and what Mr. Fernandez describes as low creep resistance and oxidation. (Pls.' Opp'n at Exhibit "B".) In his supplemental expert report, dated May 5, 1997, Mr. Fernandez discusses his response to the reports of defendants' experts. (Pls.' Opp'n at Exhibit "C".)

The materials that Mr. Fernandez relied on in writing his expert report include:

(1) R & D books 1, 2, and 3 from John Ach, (2) batch cards for Lokweld 1055/1056, (3) various internal technical reports and correspondence from Ralph Wilson Plastics ("RWP"), (4) Virginia Polytechnic Institute ("VPI")—RWP correspondence, (5) legal documents on formulations, (6) quality control books, (7) reports of the analytical group at RWP, (8) reports from independent laboratories related to Lokweld 1055 and Lokweld 1056, (9) a complaints database, (10) labels, technical data sheet, and warranty claim procedures and guideline forms, (11) material data sheets on the materials used in the manufacture of Lokweld 1056 and some of the materials used to manufacture Lokweld 1055, (12) three versions of VPI study, (13) depositions of Ralph Wilson employees, and (14) scientific literature relating to resins and adhesives.

(Pls.' Opp'n at Exhibit "B".) In addition to these materials listed in his expert report, Mr. Fernandez explained at his depositions that he relied on a variety of sources for his opinions. For example, when asked by defense counsel during depositions where he derived his experience with contact adhesives, Mr. Fernandez responded, "It derives from many sources. It derives from [Henkel]. It derives from study, from lectures, from talking to people in the business, suppliers, and people at [ASTM.]." (Pls.' Opp'n at Exhibit "G", p. 55.) Despite the bases for his opinion noted above, the defendants advance that Mr. Fernandez is basing his conclusions and opinions solely on his prior experience in developing adhesives at Henkel. (*See* Defs.' Br.)

Although Mr. Fernandez did not disclose the exact formulas or testing protocols of Henkel in his deposition, he provided a de-

tailed basis for his expert opinion in this case. Upon review of the transcripts of his depositions, it is evident that Mr. Fernandez provided information concerning his qualifications including: the types of contact adhesives he formulated at Henkel, their general composition, and the purposes of the adhesives. (*See* Pls.' Opp'n at Exhibits "E" & "G".) While he did not reveal the exact composition of these adhesives, he testified that he never developed an adhesive with the same antioxidants or resins used by the defendants. (Decl. of Julio Fernandez ¶ 6.) Further, even though Mr. Fernandez did not disclose the test protocols of Henkel, he indicated that he was familiar with and qualified to interpret data from the following tests which were used to analyze Lokweld: FTIR, GPC, SEM, atomic absorption, infrared spectroscopy, GCMS, shear tests, cleavage tests, film tensile tests, accelerated heat aging tests, oxygen aging, plug tests, DMA, and DSC. (Pls.' Opp'n at Exhibit "E", pp. 123–127, 140–141, 152, 159, 163, 172, 178–180.)

### 3. Conclusion

■ The defendants object to the fact that Mr. Fernandez admitted that the conclusions in his report were based on his prior experience at Henkel, and then when asked about the specific composition and ingredients of the adhesives he developed there, he claimed that this was proprietary information which he could not disclose. (*See generally,* Defs.' Br.) The defendants assert that if Mr. Fernandez does not provide more specific answers to these questions, he should be barred as plaintiffs' expert for not providing a basis for his opinion.

Despite the fact that Mr. Fernandez did not disclose the formulas or testing procedures of Henkel, he has provided substantial information concerning the basis of his opinion. Fed.R.Civ.P. 26.

Rule 26 provides that an expert report shall contain "the data or other information considered by the witness in forming the opinions[.]" Rule 26(a)(2)(B). Mr. Fernandez has cataloged the data he relied upon and has described his analysis of the tests performed. For example, Mr. Fernandez stated that in formulating his opinion that Lokweld's failures resulted in part from the resins in its composition, he relied upon established scientific principles, the literature and technical data sheets related to such resins, and the defendants' own data. (Pls.' Opp'n at Exhibit B, pp. 11–17; Exhibit C, pp. 11–22.) Mr. Fernandez has cited to these sources as a basis for his opinion, in addition to the knowledge that may have come from his years of experience and past tests performed at Henkel. Thus, Mr. Fernandez has provided a basis which allows one to comprehend how he arrived as his opinion.

The facts presented in this case raise a unique issue under Rule 26. The defendants insist plaintiffs' expert must provide more information in order to fully satisfy the basis requirement of Rule 26(a)(2)(B). In cases where experts have been precluded for not providing an adequate basis for their opinion, they either provided no basis for their opinion, *see Dancy v. Hyster, Co.,* 127 F.3d 649, 652 (8th Cir.1997), *cert. denied,* —— U.S. ——, 118 S.Ct. 1186, 140 L.Ed.2d 316 (1998) (expert could have, but did not test his theory, and thus had no basis for reaching his opinion); *Cummins v. Lyle Industries,* 93 F.3d 362, 369–371 (7th Cir.1996) (expert failed to conduct tests or research to substantiate his opinions); they were not qualified in the area in which they opined, *see Smelser v. Norfolk Southern R. Co.,* 105 F.3d 299, 303 (expert's testimony about the defectiveness of a seat belt and resulting injuries outside his expertise in biomechanics); *Diaz v. Johnson Matthey, Inc.,* 893 F.Supp. 358, 372–73 (D.N.J.1995) (pulmonologist expert not qualified to opine on platinum allergy); or did not provide a complete statement of their opinions, *see Smith v. State Farm Fire and Casualty,* 164 F.R.D. 49, 53–54 (S.D.W.V.1995) (court found expert reports which were a page or two in length and referred to basis for opinions in vague terms, with few specific references, insufficient). This case is distinguishable. Mr. Fernandez has provided two detailed, lengthy reports which provide a complete statement of his opinions. Furthermore, the subject matter of these reports is within his area of expertise and the reports refer at length to the sources he relied upon.

As stated in *Reed*, guessing at how and why an expert reached his conclusions causes great prejudice. 165 F.R.D. at 530. After examining the record, it appears that the defendants have not been significantly prejudiced by the plaintiffs with regard to the information proffered as the basis for Mr. Fernandez's opinion. One of the main purposes of Rule 26 is to prevent unfair surprise. In short, there has been no unfair surprise to the defendants.

Further, exclusion of an expert report is a severe remedy and is not warranted under the facts presented in this matter. Even assuming arguendo that the disclosures made by Mr. Fernandez were somewhat incomplete, the information not disclosed is of marginal relevance. Mr. Fernandez answered questions regarding his knowledge of formulating adhesives. He also provided information regarding testing protocols in order to establish his familiarity with the various types used in the adhesives industry and his ability to interpret their results. The exact formulas of adhesives that he developed or worked with at Henkel do not appear to be relevant in light of the fact that Mr. Fernandez did not compare the composition of these to Lokweld in order to formulate his opinion. For example, Mr Fernandez testified:

Q. In reaching your opinions in this case with regard to the stability of the formula for Lokweld 1055, did you rely at all on your experience in using various antioxidants at National Starch LePage?

A. My primary evaluation, my conclusions on the 1055 derived from experimental data available in the analytical lab books and available in reports from the lab of failures occurring in Lokweld and in IBM, and all those things.

Q. Did you rely—did you rely at all or in part on your experience at National Starch in reaching any of those conclusions?

A. . . . [T]o answer your question properly, Lokweld used a different antioxidant, I was not aware that I had not used before. So I could not, on the basis of my prior experience, say Lokweld, excuse me, [particular adhesive ingredient] is not good for this. That conclusion was arrived at from looking at the experimental data.

(Pls.' Opp'n at Exhibit G, pp. 62–63.) Such statements demonstrate that disclosure of Henkel's proprietary information, such as the specific formulas of its adhesives, will not provide any significant insights into the basis for Mr. Fernandez's opinions and conclusions regarding Lokweld.

Moreover, there is no allegation of bad faith. Thus, the exclusion of his testimony would be an especially harsh remedy. Though the court has broad discretion to sanction litigants for violations of the discovery rules, any sanction should be commensurate with the violation. *See Newman*, 60 F.3d at 156. The Third Circuit has recognized that striking testimony is an severe sanction that should be used sparingly. Given the circumstances of this case, I conclude that the plaintiffs would be severely prejudiced if Mr. Fernandez was disqualified. *See U.S. ex. rel. Cherry Hill v. Healthcare Rehab*, 994 F.Supp. 244, 251 (D.N.J.1997) (in determining whether expert should be disqualified, courts consider whether another expert is available and whether the opposing party will be unduly burdened by having to retain a new expert). The prejudice far outweighs any prejudice to the defendants in not having answers to certain limited questions from Mr. Fernandez. Thus, he shall not be precluded from serving as plaintiffs' expert.

## IV. CONCLUSION

For the foregoing reasons, the defendants' motion to compel additional deposition testimony by Julio Fernandez, one of plaintiff's experts or, in the alternative, to preclude him from testifying as plaintiffs' expert, pursuant to Fed.R.Civ.P. 26. shall be denied. An appropriate order will enter this date.