**Louise PAULISSEN, Plaintiff,**

v.

**UNITED STATES LIFE INSURANCE COMPANY IN THE CITY OF NEW YORK, et al., Defendants.**

**No. CV 01–07066 ABC.**

United States District Court, C.D. California.

May 13, 2002.

Steven Bergh, Esq., Prenovost Normandin Bergh & Dawe, Santa Ana, for Plaintiff/Petitioner/Appellant.

Michael F. Bell, Esq., Galton & Helm, Los Angeles, for Defendant/Respondent/Appellee.

## ORDER RE: PLAINTIFF'S MOTION FOR JURY TRIAL; PLAINTIFF'S MOTION TO EXCLUDE EXPERT WITNESS; DEFENDANT'S MOTION FOR SUMMARY JUDGMENT

COLLINS, District Judge.

This case arises out of the refusal of Defendant United States Life Insurance Company ("U.S.Life") to pay accidental death benefits to Plaintiff Louise Paulissen after the death of her husband, Peter Paulissen. Pending before the Court are three motions: Plaintiff's Motion for Jury Trial, Plaintiff's Motion to Exclude Expert Witness, and Defendant's Motion for Summary Judgment. The Motions came on regularly for hearing before this Court on May 20, 2002. Upon consideration of the submissions of the parties, the case file, and the arguments of counsel, the Court hereby DENIES all three Motions.

### I. FACTUAL [1] AND PROCEDURAL HISTORY

In October 2000, at the age of 63, Mr. Paulissen embarked on a trip to Nepal to trek through portions of the Himalayas as part of a group trek organized by the Himalayas Explorers Club. *See* Amended Separate Statement of Uncontroverted Facts & Conclusions of Law ("UF") ¶ 10. Mr. Paulissen was an experienced mountain climber. He regularly climbed local Southern California mountains and had

---

1. To the extent that the facts are undisputed, the Court relies on Defendants' Separate Statement of Uncontroverted Facts and Conclusions of Law. To the extent that the facts are in dispute, the Court construes the facts in the light most favorable to Plaintiff. *See Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986).

climbed Mt. Whitney several times, most recently in 1999. Over the years, he had also climbed mountains in Canada and Europe. *See* UF ¶ 9. On October 28, 2000, while on the trek, Mr. Paulissen died of high-altitude pulmonary edema ("HAPE"). *See* UF ¶¶ 7–8.

Mr. Paulissen had accidental death and dismemberment coverage with U.S. Life though Certificate No. 01031271103 under a group policy, No. G–175,905, issued to the American Society of Mechanical Engineers. *See* UF ¶ 1; Exhibit 4. At all times relevant, Mr. Paulissen's Certificate was in force. *See* UF ¶ 3. The Certificate provides for accidental death benefits in the amount of $450,000 for "accidental loss of life" if an insured person "suffers such loss solely as a result of an injury caused by an accident." *See* UF ¶ 4. The Certificate also provides that "no benefit will be paid for any loss that results from or is caused directly, indirectly, wholly or partly by ... a physical or mental sickness, or treatment of that sickness." *See* UF ¶ 5. The Certificate does not define the terms "accident," "injury," or "physical sickness." *See* UF ¶ 6.

Plaintiff has submitted the expert report of Dr. Judith Klein, who describes HAPE as "a temporary condition caused by ascent to high altitude at a rate greater than the body's ability to adapt." Exhibit 20, sub-exhibit 1. She describes the progression of HAPE as follows:

As the amount of oxygen in the air decreases with increasing altitude, the pressure in the blood vessels in the lung[s] rise[s] abnormally .... This elevated pressure causes leakage of fluid into the air sacs of the lung, making breathing increasing[ly] difficult. The fluid filling the lungs causes a cough that eventually produces pinkish, frothy sputum. The individual with HAPE will eventually asphyxiate and die.

*Id.* HAPE is, however, completely treatable: "If ... the condition is recognized early and the victim descends to a lower altitude, HAPE can be completely reversed and the victim will suffer no lasting harm." *Id.*[2]

On December 15, 2000, Plaintiff submitted a claim form and other documents to Seabury & Smith, an insurance broker for the American Sopciety of Mechanical Engineers. *See* UF ¶¶ 13–14. On December 28, 2000, U.S. Life received the materials from Seabury & Smith. *See* UF ¶ 15. On January 17, 2001, John Hyland at U.S. Life retained Larry Odel at International Claims Specialists, a third-party claims investigation company, to conduct an investigation of the claim. *See* UF ¶ 16. On July 25, 2001, Mr. Hyland informed Plaintiff's counsel that her claim was denied. *See* UF ¶ 28. According to that letter, U.S. Life concluded "that [Mr. Paulissen's death] would be the result of natural causes and/or would fall under the policy exclusion for 'sickness.'" Exhibit 13.

On July 16, 2001, Plaintiff filed suit in Orange County Superior Court against U.S. Life and Tripguard Plus Travel Insurance, alleging claims for declaratory relief and tortious breach of contract. Defendants removed the action to this Court on August 14, 2001, on the basis of diversity jurisdiction, 28 U.S.C. § 1332. On October 30, 2001, the parties stipulated to dismiss National Union Fire Insurance Company, erroneously sued as Tripguard Plus Travel Insurance.

On April 10, 2002, Plaintiff filed motions for a jury trial and to exclude Dr. Eric Weiss as an expert witness, both noticed for hearing on May 6, 2002. Plaintiff withdrew those motions on April 15, 2002.

2. Despite Plaintiff's objection to his testimony, the declaration of Dr. Eric A. Weiss regarding the symptoms, progression, and treatment of HAPE is not significantly different from Dr. Klein's report. *See* Decl. of Eric A. Weiss, M.D., ¶¶ 3–4.

Plaintiff refiled those motions on April 15, 2002, and April 12, 2002, respectively, both noticed for hearing on May 13, 2002. U.S. Life, the only remaining defendant, filed an Opposition to the Motion for Jury Trial on April 23, 2002. U.S. Life did not file a separate opposition to the Motion to Exclude Expert Witness. U.S. Life's position is stated in a joint stipulation of the parties filed April 15, 2002.

U.S. Life filed a Motion for Summary Judgment on April 15, 2002, also noticed for hearing on May 13, 2002. Plaintiff filed an Opposition on April 29, 2002. U.S. Life filed a Reply on May 6, 2002.[3]

## II. PLAINTIFF'S MOTION FOR A JURY TRIAL

■ Federal Rule of Civil Procedure 38(b) provides that any party may demand a jury trial by serving and filing a demand in writing no later than 10 days after the service of the last pleading (*i.e.*, the answer). Plaintiff waived her right to a jury trial both by not making a timely demand and explicitly, through her counsel, at the October 29, 2001, Scheduling Conference. *See* Jury Trial Motion at 4:10–11. Plaintiff acknowledges that this waiver was intentional. *See id.* at 4:11–12.

■ Notwithstanding the provisions of Rule 38(b), "the court in its discretion upon motion may order a trial by a jury of any or all issues." Fed.R.Civ.P. 39(b). The Ninth Circuit has consistently held that the district court's discretion under Rule 39(b) is " 'narrow' and 'does not

permit a court to grant relief when the failure to make a timely demand results from an oversight or inadvertence.' " *Kletzelman v. Capistrano Unified Sch. Dist.*, 91 F.3d 68, 71 (9th Cir.1996) (quoting *Blau v. Del Monte Corp.*, 748 F.2d 1348, 1357 (9th Cir.1984)).[4] When a party intentionally waives her right to a jury trial, she cannot meet the burden of demonstrating " 'something beyond the mere inadvertence of counsel ....' " *Bellmore v. Mobil Oil Corp.*, 783 F.2d 300, 307 (2nd Cir.1986) (quoting *Alvarado v. Santana–Lopez*, 101 F.R.D. 367, 368 (S.D.N.Y.1984)) (plaintiff expressly disclaimed any intent to seek a jury trial). *See also Sait Electronics, S.A. v. Schiebel*, 846 F.Supp. 17, 18 (S.D.N.Y. 1994) (denying motion for jury trial where "it appears that defendant's failure to make a timely demand was not due to inadvertence at all, but to a deliberate decision followed by ... a change of mind"); *cf. Berger v. Goodyear Tire & Rubber Co.*, 83 F.R.D. 114, 116 (S.D.N.Y. 1979) (granting motion for jury trial where "the failure was a product of mistake inadvertence [sic] and not of an intentional waiver of a jury trial").[5] Because Plaintiff intentionally and explicitly waived her right to a jury trial, the Court declines to exercise its discretion under Rule 39(b) to order a trial by jury. The Motion for Jury Trial is hereby DENIED.

## III. PLAINTIFF'S MOTION TO EXCLUDE EXPERT WITNESS

Plaintiff seeks to exclude the testimony and report of U.S. Life's expert, Dr. Eric

---

**3.** The Court has not considered Plaintiff's unauthorized Sur–Reply brief or the attached article.

**4.** Plaintiff's reliance on *Pacific Fisheries Corp. v. HIH Casualty & General Ins., Ltd.*, 239 F.3d 1000 (9th Cir.2001), is inexplicable. There, the Ninth Circuit affirmed the district court's denial of the motion for jury trial. Plaintiff

cited to no cases in which a court granted a motion for a jury trial after the party explicitly waived any intention to demand a trial before a jury.

**5.** The Second Circuit applies a standard on Rule 39(b) motions similar to that employed by the Ninth Circuit. *See Russ v. Standard Ins. Co.*, 120 F.3d 988, 989 (9th Cir.1997).

A. Weiss, based on U.S. Life's untimely designation of Dr. Weiss and U.S. Life's failure to provide a complete report under Federal Rule of Civil Procedure 26(a)(2)(B).

Plaintiff's Motion to Exclude Expert Witness does not explicitly seek to exclude Dr. Weiss' report from consideration on the Motion for Summary Judgment. The Motion to Exclude is based on alleged violations of Federal Rule of Civil Procedure 26(a)(2), which sets forth requirements for disclosure of experts to be called at trial and does not establish requirements for disclosure of experts to be used in summary judgment motions. However, in Plaintiff's Evidentiary Objections submitted in opposition to the Motion for Summary Judgment, she seeks a ruling on the Motion to Exclude Expert Witness prior to a ruling on the Motion for Summary Judgment. See Evidentiary Objections at 4:22–23. Because the Motion to Exclude Expert Witness does not actually seek exclusion of Dr. Weiss' report at the summary judgment stage, the Court does not necessarily have to rule on this Motion prior to the Motion for Summary Judgment. However, in the interest of resolving as many issues as expeditiously as possible, the Court will address the Motion now.

■ U.S. Life designated Dr. Weiss as an expert one day late. See Joint Stipulation at 4:16, 20–21. The Court does not find that exclusion is warranted as a sanction for this untimely disclosure. "In order to exclude expert testimony, the opposing party must be prejudiced." *Fitz, Inc. v. Ralph Wilson Plastics Co.*, 184 F.R.D. 532, 536 (D.N.J.1999). There is no prejudice here. It is undisputed that U.S. Life had identified Dr. Weiss as an expert witness and provided Plaintiff with a copy of Dr. Weiss' report six months before the deadline for expert designation. See Joint Stipulation at 4:17–19. Plaintiff was not surprised or caught unprepared by the late designation. The Court will not exclude Dr. Weiss on this ground.

■ As for the alleged noncompliance with Rule 26(a)(2)(B), Plaintiff must also show prejudice to exclude Dr. Weiss on this ground. See *Fitz*, 184 F.R.D. at 536. It is true that "[p]otential sanctions for violation of Fed.R.Civ.P. 26(a)(2)(B) may be severe given that 'nothing causes greater prejudice than to have to guess how and why an adversarial expert reached his or her conclusion.'" *Id.* (quoting *Reed v. Binder*, 165 F.R.D. 424, 429 (D.N.J.1996)) (alteration omitted). Plaintiff has admitted that "[t]his issue has been resolved in principal [sic], because U.S. Life has offered to provide the documents or other information relied upon by Dr. Weiss in forming his opinion." Joint Stipulation at 7:24–25. Accordingly, the Court does not find that Plaintiff has demonstrated that she has been prejudiced by the incomplete report, particularly because Plaintiff could have brought a motion to compel disclosure of the rest of the Rule 26(a)(2)(B) information. *Cf. Minnesota Mining & Mfg. Co. v. Signtech USA, Ltd.*, 177 F.R.D. 459 (D.Minn.1998).[6] Because Plaintiff has suffered no prejudice from the untimely designation of Dr. Weiss or from any omission of the required information under Rule 26(a)(2)(B), the Court hereby DENIES the Motion to Exclude Expert Witness.

---

**6.** At this time, the Court does not decide if the exception for Rule 26(a)(2)(B) disclosure for non-retained experts applies to Dr. Weiss. In all the cases cited by U.S. Life, the non-retained expert was a treating physician. *See Sprague v. Liberty Mutual Ins. Co.*, 177 F.R.D. 78 (D.N.H.1998); *Shapardon v. West Beach Estates*, 172 F.R.D. 415 (D.Haw.1997); *Brown v. Best Foods*, 169 F.R.D. 385 (N.D.Ala.1996). Dr. Weiss never treated Mr. Paulissen, so it is not at all clear that this exception should apply.

In her Evidentiary Objections, Plaintiff asks for a continuance of the Motion for Summary Judgment if the Motion to Exclude Expert Witness is denied so she can take Dr. Weiss' deposition. *See id.* at 4:23–24. Because Plaintiff has failed to make a formal request pursuant to Federal Rule of Civil Procedure 56(f), the Court will not continue the hearing on the Motion.[7]

## IV. DEFENDANT'S MOTION FOR SUMMARY JUDGMENT

### A. Legal Standard

The party moving for summary judgment has the initial burden of establishing that there is "no genuine issue as to any material fact and that [it] is entitled to a judgment as a matter of law." Fed. R. Civ. Pro. 56(c); *see British Airways Bd. v. Boeing Co.,* 585 F.2d 946, 951 (9th Cir. 1978); *Fremont Indemnity Co. v. California Nat'l Physician's Insurance Co.,* 954 F.Supp. 1399, 1402 (C.D.Cal.1997).

If, as here, the non-moving party has the burden of proof at trial, the moving party has no burden to negate the opponent's claim. *Celotex Corp. v. Catrett,* 477 U.S. 317, 323, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). The moving party does not have the burden to produce *any* evidence showing the absence of a genuine issue of material fact. *Id.* at 325, 106 S.Ct. 2548. "Instead, ... the burden on the moving party may be discharged by 'showing'—that is, pointing out to the district court—that there is an absence of evidence to support the nonmoving party's case." *Id.* (citations omitted).

Once the moving party satisfies this initial burden, "an adverse party may not rest upon the mere allegations or denials of the adverse party's pleadings.... [T]he adverse party's response ... **must set forth specific facts** showing that there is a genuine issue for trial." Fed. R. Civ. Pro. 56(e) (emphasis added). A "genuine issue" of material fact exists only when the nonmoving party makes a sufficient showing to establish the essential elements to that party's case, and on which that party would bear the burden of proof at trial. *Celotex,* 477 U.S. at 322–23, 106 S.Ct. 2548. "The mere existence of a scintilla of evidence in support of the plaintiff's position will be insufficient; there must be evidence on which a reasonable jury could reasonably find for plaintiff." *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 252, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). The evidence of the nonmovant is to be believed, and all justifiable inferences are to be drawn in favor of the nonmovant. *Id.* at 248, 106 S.Ct. 2505. However, the court must view the evidence presented "through the prism of the substantive evidentiary burden." *Id.* at 252, 106 S.Ct. 2505.

### B. Analysis

#### 1. Declaratory Relief Claim

Plaintiff's first claim for relief seeks a declaration that U.S. Life is obligated to pay her accidental death claim. The sole issues presented by this Motion are whether Mr. Paulissen's death was accidental and, if so, whether HAPE is excluded from coverage as a "sickness." [8]

#### a. Accidental Death

The Court concludes that Mr. Paulissen's death was "accidental" and, there-

---

7. Additionally, the Court notes that the discovery deadline has passed.

8. Neither Plaintiff's nor Defendant's experts can testify about whether HAPE is a "sickness" excluded from the accidental death coverage. The definition of "sickness" and the application of that definition to HAPE are **legal**, rather than factual, questions, and must be determined by the Court.

fore, covered by the Certificate. California law [9] distinguishes between polices that cover "accidental death" and those that cover death by "accidental means." *See Weil v. Fed. Kemper Life Assurance Co.,* 7 Cal.4th 125, 134–35, 140, 27 Cal.Rptr.2d 316, 866 P.2d 774 (1994). "This distinction is critical since 'policies requiring only that there be proof of accidental death have been construed broadly, such that the injury or death is likely to be covered unless the insured virtually intended his injury or death ....'" *Olson v. Am. Bankers Ins. Co. of Fla.,* 30 Cal.App.4th 816, 822, 35 Cal.Rptr.2d 897 (1994) (quoting *Weil,* 7 Cal.4th at 140, 27 Cal.Rptr.2d 316, 866 P.2d 774) (internal quotation omitted).

The Court must first determine if a policy covering "loss solely as a result of an injury caused by an accident," UF ¶ 4, is an "accidental death" or "accidental means" policy. The California Court of Appeal, in *Olson,* found that nearly identical policy language [10] was ambiguous because the insurance company failed to use the term "means" in drafting the policy. *See* 30 Cal.App.4th at 824, 35 Cal.Rptr.2d 897. The *Olson* court then concluded that "[s]ince uncertainties in an insurance contract are resolved against the insurer and in favor of imposing liability, we hold that the subject policy is of the 'accidental death' variety." *Id.* at 824–25, 35 Cal. Rptr.2d 897. Because the policy language in Mr. Paulissen's certificate is nearly identical to that faced by the Court in

*Olson,* the Court finds that this is an "accidental death" policy.[11]

Accordingly, U.S. Life—and its adjuster, John Hyland—are incorrect that Plaintiff must demonstrate that Mr. Paulissen's death resulted from "some intervening element of force or violence." Motion at 10:23. *See Olson,* 30 Cal.App.4th at 825–26, 35 Cal.Rptr.2d 897 (rejecting jury instructions that required plaintiff to prove that something unforeseen, unexplained, unusual, or involuntary occurred to cause the injury). Rather, because this is an "accidental death" policy, Plaintiff need merely show that Mr. Paulissen's death itself was unexpected. *See, e.g., Bornstein v. J.C. Penney Life Ins. Co.,* 946 F.Supp. 814, 819 (C.D.Cal.1996) ("The rule of law established is that if the death of the insured was objectively unexpected and unintended by the insured and happened out of the usual course of events, his death was accidental.").

Plaintiff has met her burden. According to U.S. Life's own expert, HAPE is "uncommon." Only two to three percent of trekkers to the Mt. Everest base camp are affected. And it is only fatal if the impaired individual does not descend to a lower altitude quickly enough. *See* Weiss Decl. ¶ 4. Death from HAPE cannot be said to be a common or expected **result** of a trek at high altitudes. Mr. Paulissen's "death was caused by accident because it was an unusual or unanticipated result flowing from a commonplace cause." *Car-*

9. In this diversity action, the Court is obligated to apply California law.

10. The *Olson* policy covered "bodily injury caused solely by accident." 30 Cal.App.4th at 824, 35 Cal.Rptr.2d 897.

11. For this reason, U.S. Life's reliance on *Williams v. Hartford Accident & Indemnity Co.,* 158 Cal.App.3d 229, 204 Cal.Rptr. 453 (1984), and *Alessandro v. Massachusetts Casu-*

*alty Ins. Co.,* 232 Cal.App.2d 203, 42 Cal.Rptr. 630 (1965), where the California courts applied an "accidental means" analysis, is misplaced. *See Williams,* 158 Cal.App.3d at 235, 204 Cal.Rptr. 453 ("that activity, except for its result, was not of such a nature as properly to be characterized an 'accident' "); *Alessandro,* 232 Cal.App.2d at 209, 42 Cal.Rptr. 630 ("In the instant case there is no evidence of falling, slipping, overexertion, or of any external force striking the body of the appellant.").

*roll v. CUNA Mutual Ins.*, 894 P.2d 746, 749 (Colo.1995) (emphasis in original) (quotation and alteration omitted).[12]

### b. Sickness Exclusion

■ Because Mr. Paulissen's death was accidental, Plaintiff is entitled to recover on the Certificate unless Mr. Paulissen's death was "caused directly, indirectly, wholly or partly by . . . a physical or mental sickness, or treatment of that sickness." UF ¶ 5. The Ninth Circuit has explained that:

> [w]e understand it to be the general view that provisions of this sort are strongly construed against the insurer and that indemnity for death from accident covers death resulting from bodily infirmity or disease directly attributable to and proximately caused by the accident. Such [exclusionary] provisions apply only to bodily infirmity or disease existing prior to the accident or contracted subsequent to and independently of the accident.

*New York Life Ins. Co. v. Wilson*, 178 F.2d 534, 536 (9th Cir.1949) (as amended).[13] U.S. Life bears the burden of proving that Mr. Paulissen's death was the result of illness. *See id.* at 535.[14] In this case, of course, there is no evidence that Mr. Paulissen's death was caused by—or even hastened by—any preexisting illness. Rather, he developed HAPE solely as a result of his ascent to high altitudes. And he could have recovered completely had he been able to return to a lower altitude soon enough.

■ Sickness, disease, and illness have broad, generic definitions. *See, e.g., Fidelity Serv. Ins. Co. v. Jones*, 280 Ala. 195, 191 So.2d 20, 27 (1966) (" 'The ordinary definition of the word [disease] is: Any derangement of the functions or alteration of the structure of the animal organs. This, as you will see, would include the slightest and most temporary ailment.' ") (quoting *Meyer v. Fidelity & Casualty Co.*, 96 Iowa 378, 65 N.W. 328, 329 (Iowa 1895)) (internal quotation omitted); *Zuckerman*

---

**12.** The *Carroll* court held that death from a massive intracranial hemorrhage caused by a rupture of a cerebral aneurysm during sexual intercourse with her husband was an accident. *See* 894 P.2d at 753 ("Death was certainly not an expected, intended, or foreseeable result of intercourse."). For other examples of accidental deaths from voluntary, ordinary means, see *Hartford Life Ins. Co. v. Catterson*, 247 Ark. 263, 445 S.W.2d 109 (1969) (death from heat and cold are accidental); *Bobier v. Beneficial Standard Life Ins. Co.*, 40 Colo.App. 94, 570 P.2d 1094 (1977) (death from aspiration after vomiting might be accidental), *cited in Carroll*, 894 P.2d at 752–53; *Martin v. Ins. Co. of N. Am.*, 1 Wash.App. 218, 460 P.2d 682 (1969) (death from exposure is accidental).

**13.** For death from illness excluded from coverage, see, for example, *Khatchatrian v. Continental Casualty Co.*, No. CV 01–8183 AHM, 2002 WL 738716 (C.D.Cal. Apr.18, 2002) (decedent died from an "intercranial hemorrhage" due to preexisting conditions of uncontrolled hypertension and renal cancer). The Court finds that the pre-existing condition

cases are inapposite. In those cases, the courts had to determine if death was caused by the pre-existing illness or a separate accident. In this case, the alleged sickness and the accident are the same event.

**14.** The California Supreme Court, in *Zuckerman v. Underwriters at Lloyd's, London*, 42 Cal.2d 460, 474–76, 267 P.2d 777 (1954) (en banc), held that the insured bore the burden of proof that "death was not occasioned by intentional self-injury, disease or natural causes." However, the Court also explained that "if intentional self-injury, disease or natural cases caused [the insured's] death, it did not result from an accident within the policy." *Id.* at 476, 267 P.2d 777. However, in light of the accidental death/accidental means distinction upheld in *Weil*, the Court finds that, under an accidental death policy, a death could both be accidental and caused by sickness. Accordingly, the Court follows the Ninth Circuit in requiring U.S. Life to prove that HAPE is an illness.

*v. Underwriters at Lloyd's London,* 42 Cal.2d 460, 475, 267 P.2d 777 (1954) (en banc); *Black's Law Dictionary* 480 (7th ed.1999) (defining disease as "[a] deviation from the healthy and normal functioning of the body"). But, as in the Ninth Circuit's decision in *Wilson,* the definitions are narrowly construed in the context of insurance policies. In particular, temporary conditions and indispositions are not considered to be diseases. *See Jones,* 191 So.2d at 26 (" 'as the imperfect working is not permanent, and the body returns at once, or in a short period of time, to its normal condition, it does not rise to the dignity of a disease' ") (quoting *Manufacturers' Accident Indemnity Co. v. Dorgan,* 58 F. 945, 951 (6th Cir.1893)); *id.* at 27 (" 'A mere temporary disorder, that was new or unusual with him, arising out of some sudden and unexpected derangement of the system ... would not be a 'disease' '") (quoting *Meyer,* 65 N.W. at 329).

■ It is undisputed that Mr. Paulissen's HAPE was not a "disorder of a somewhat established or settled character." *Meyer,* 65 N.W. at 330. It did not arise from some organic cause, but rather from exposure to high altitudes. It was "[a] mere temporary disorder, that was new or unusual with him, arising from sudden and unexpected derangement of the system[.]" *Id.* Mr. Paulissen's symptoms would likely have been completely relieved—without medical intervention—if he had reached a lower elevation more quickly. Accordingly, the Court finds that HAPE is not properly characterized as a "sickness." His death should not have been excluded from coverage under the Certificate.

■ U.S. Life is not entitled to summary judgment on Plaintiff's first claim, for declaratory relief.[15]

### 2. Tortious Breach of Contract Claim

Plaintiff's tortious breach of contract claim primarily alleges that U.S. Life breached its covenant of good faith and fair dealing by failing to undertake an adequate investigation of her claim. *See* Complaint ¶¶ 31–32. She also alleges that U.S. Life's denial of her claim was not "justifiable or reasonable." *See id.* ¶ 35.

■ The Motion for Summary Judgment is before the Court in a curious posture. U.S. Life's moving papers do not address at all Plaintiff's allegations that the investigation was inadequate. Rather, U.S. Life merely contends that denial was not unreasonable. *See* Motion at 15–18. Plaintiff's Opposition, in turn, argues that U.S. Life's investigation was not conducted in good faith, but does not address at all whether the denial of the claim was reasonable. *See* Opp'n at 14–16. Because U.S. Life has not addressed the heart of Plaintiff's claim, the Court must deny the Motion and allow Plaintiff to proceed on her tortious breach of contract claim, at least to the extent that she alleges that U.S. Life's investigation was inadequate.

■ Plaintiff may also proceed on this claim to the extent that she alleges that denial of her claim for accidental death benefits was unreasonable. Relying on case law standing for the proposition that "an erroneous interpretation of an insurance contract by an insurer does not necessarily result in tort liability for breach of the covenant of good faith and fair dealing," *Dalrymple v. United Servs. Auto. Assoc.,* 40 Cal.App.4th 497, 514, 46 Cal.Rptr.2d 845 (1995), U.S. Life contends that its denial of Plaintiff's claim was reasonable because no court has previously determined whether death from HAPE is accidental or whether HAPE is a sickness.

---

**15.** Plaintiff's counsel failed to file a cross-motion for summary judgment. Accordingly, the Court cannot grant judgment in Plaintiff's favor at this time.

However, U.S. Life has a duty to know and apply California law distinguishing between accidental death and accidental means policies, especially in light of the fact that this distinction sets California apart from other jurisdictions. Additionally, U.S. Life has a duty to recognize that the Certificate at issue here creates an "accidental death" policy that must be liberally construed. There is no indication that U.S. Life recognized and applied this distinction in reviewing Plaintiff's claim. In light of *Weil* and *Olson,* the Court must find that U.S. Life has not borne its burden of proving that denial of the claim was reasonable.

## IV. CONCLUSION

Based on the foregoing, the Court DENIES Plaintiff's Motion for Jury Trial, Plaintiff's Motion to Exclude Expert Witness, and U.S. Life's Motion for Summary Judgment. Although it is clear from the Court's analysis that Plaintiff is, at least, entitled to full payment on the Certificate, the Court cannot enter judgment in Plaintiff's favor. Plaintiff has not brought her own motion for summary judgment, and the motion filing cut-off date has passed.[16] Before proceeding to a bench trial that would waste the parties' time and money, as well as the Court's time, the parties are hereby ORDERED to participate in a settlement conference before either the Magistrate Judge or another Rule 16 method of their choice.

---

16. Frankly, the Court would waive the motion cut-off deadline if Plaintiff's motion would resolve the entire case. However, the tortious breach of contract claim would remain.