[No. B002232. Second Dist., Div. Two. July 12, 1984.]

ERNEST GEORGE WILLIAMS, Plaintiff and Appellant, v.
HARTFORD ACCIDENT AND INDEMNITY COMPANY, Defendant
and Respondent.

**COUNSEL**

Girardi, Keese & Crane and John A. Girardi for Plaintiff and Appellant.

Overton, Lyman & Prince and Kelley K. Beck for Defendant and Respondent.

**OPINION**

**ROTH, P. J.**—Appellant Ernest George Williams, the beneficiary of a policy of accidental death and dismemberment insurance issued by respondent Hartford Accident and Indemnity Company, filed his complaint for damages in connection therewith on May 20, 1981. In the fashion hereinafter described, respondent was granted summary judgment on June 16, 1983. The facts giving rise to the litigation are as follows.

On May 24, 1978, appellant, while seated at the desk in his law office, observed a round circle in the field of vision of his right eye. When he pressed the small of his finger against his eyelid the spot disappeared. Believing his eyelashes were sticking, he trimmed them. Five days later he had difficulty wearing his contact lenses because of eye irritation. The following morning, May 30th, he awoke at approximately 4:45 a.m. and observed a pie-shaped portion taken out of the lower center section of the field of vision of his right eye. Since he was not in pain, he decided to take his routine, two-mile jog and call his eye doctor after he got to his law office.

Appellant's jog went as always. He experienced no pain, nor did he observe any change in the obstruction in the field of vision of his right eye. He did not fall, bump into anyone, or even stop suddenly. He traveled over the same jogging path he typically traveled.

Later the same morning, appellant was diagnosed as having a detached retina and was hospitalized. On June 2, 1978, he had an eight-hour surgery to correct the condition. Several days later his eye hemorrhaged, and a second corrective surgery took place on August 21 or 22, 1978. On September 28, 1978, he was told for the first time that the surgery had not been successful and that he would never regain any sight in his right eye.

Respondent's answer to appellant's complaint alleged among other things that appellant's loss of vision in his right eye resulted from a sickness or disease and not from an accident. On December 23, 1982, respondent filed its first motion for summary judgment on the grounds, among others, that a routine jog, as a matter of law, does not constitute an "accident." In support of this position respondent submitted appellant's unequivocal deposition testimony that there was nothing unusual about his jog other than the pre-existing obstruction in his field of vision. Rather, appellant contended the jog was an "accident" inasmuch as he had been told by his doctors that jogging increased the ocular pressure in his eye. According to appellant's testimony, Dr. Stephen J. Ryan advised him that where he may have had just one retinal tear prior to the jog, he ended up with four tears after it. Appellant acknowledged, however, that no doctor ever told him that his jog in any way caused or contributed to his original retinal tear.

Respondent's motion was argued and taken under submission. On February 7, 1983, the trial court ruled, conditionally granting respondent the relief requested. It nonetheless concluded, contrary to respondent's contention, that if appellant's retinal damage occurred suddenly as a result of the May 30th jog, there was a question of fact as to the existence of an "accident."

Pursuant to the trial court's conditional order, appellant filed the declaration of Dr. Ryan, stating appellant's May 30, 1978, jog caused additional retinal tears. Respondent's motion was accordingly denied by the trial court on February 22, 1983.

The deposition of Dr. Ryan was thereafter taken by respondent and based upon it a second motion for summary judgment was filed on May 4, 1983, respondent reasserting its position that irrespective of whether the jog caused additional retinal tears there was as a matter of law no "accident"

and maintaining that even were the trial court's view of the law expressed in its conditional order correct, there was no longer any genuine issue of fact, since Dr. Ryan unequivocally recanted his February 14, 1983, declaration at his deposition.

In that deposition, Dr. Ryan testified it was his opinion the one large "causative retinal tear" which was appellant's "main problem" existed prior to his jogging on May 30th, and that, while appellant's May 24, 1978, observations were compatible with the tear having developed on that date, the large "causative retinal tear," as well as the other retinal tears or holes, could have been there for a substantial period prior to the accident. Moreover, when shown his statement of February 14, 1983, Dr. Ryan indicated that it did not reflect his opinion and that a retinal detachment left untreated was "a blinding disease" and that the only way to reattach a retina so as to prevent blindness was by surgery. He was of the further opinion, however, that the jog increased the amount of subretinal fluid in appellant's right eye and that the increase made the subsequent corrective measures more difficult.

On May 20, 1983, "having read and considered in its entirety [the] deposition of Dr. Ryan taken on April 5, 1983," the trial court granted respondent's second motion for summary judgment. This appeal followed. We affirm.

Respondent's insurance policy provided for the payment of $75,000 when the loss of sight in one eye "result[s] from injury sustained by the insured . . . ." "Injury," in turn, was defined to mean "bodily injury sustained by the insured . . . caused by an accident occurring while this policy is in force . . . and which results directly and independently of all other causes in loss covered by this policy."

An exclusion provided the policy did not apply to loss resulting from "Sickness or disease, or medical or surgical treatment thereof, . . . ."

From this it will be seen that the only injuries compensable under the policy were those caused by an "accident," a term not specifically defined in the policy. In spite of the absence of such definition, the trial court herein, as noted, was of the opinion the facts associated with appellant's injury did not, as a matter of law, involve an accident, based, in its words, on "the teaching of cases such as *Geddes & Smith, Inc.* v. *St. Paul Mercury Indemnity Co.* (1959) 51 Cal.2d 558 [564] . . . that injury or damage resulting from a series of imperceptible events that finally culminate in a single tangible harm is not accidental; [but that where] there is a specific event which manifests itself at an identifiable time which caused identifiable harm at the

time it occurred, it may be accidental . . . ." Applying the stated rationale to the facts present here, the trial court concluded appellant's injury was not within the coverage provided by respondent's policy, because what was shown was that while appellant's condition was aggravated by the jog, in that an additional amount of subretinal fluid was induced thereby, that aggravation did not constitute the injury for which recovery was sought, even though it might ultimately have contributed to it, by making appellant's surgery a more difficult procedure.

While not unwilling to accept the reasoning which resulted in the summary judgment in its favor, respondent urged below and reiterates here that the conclusion arrived at was required as well by those authorities which appear to support the proposition an "accident" does not occur in the absence of some intervening element of force or violence, in a context of a happening "not according to the usual course of things." (See *Alessandro* v. *Massachusetts Cas. Ins. Co.* (1965) 232 Cal.App.2d 203, 207 [42 Cal.Rptr. 630]; see also *Slobojan* v. *Western Travelers Life Ins. Co.* (1969) 70 Cal.2d 432 [74 Cal.Rptr. 895, 450 P.2d 271]; *Brooks* v. *Metropolitan Life Ins. Co.* (1945) 27 Cal.2d 305 [163 P.2d 689]; *Arata* v. *California-Western States Life Ins. Co.* (1975) 50 Cal.App.3d 821 [123 Cal.Rptr. 631]; *Shafer* v. *American Casualty Co.* (1966) 245 Cal.App.2d 1 [53 Cal.Rptr. 446; *Johnson* v. *Aetna Life Ins. Co.* (1963) 221 Cal.App.2d 247 [34 Cal.Rptr. 484]; *Wharton* v. *Prudential Life Ins. Co.* (1954) 122 Cal.App.2d 857 [265 P.2d 956].) No such intervention being present here, it is said, no "accident" occurred.

Appellant, on the other hand, urges both of the foregoing theories are either incorrect or inapposite, and that the controlling principle, or correct rule, in the matter is that expressed in *Brooks* v. *Metropolitan Life Ins. Co.*, *supra*, 27 Cal.2d 305, 309-310 and confirmed in *Slobojan* v. *Western Travelers Life Ins. Co.*, *supra*, 70 Cal.2d 432, 443, that: " '[T]he presence of preexisting disease or infirmity will not relieve the insurer from liability if the accident is the proximate cause of death [or injury]; and that recovery may be had even though a diseased or infirm condition appears to actually contribute to cause the death [or injury] if the accident sets in progress the chain of events leading directly to death [or injury], or if it is the prime or moving cause. [Citations.]' (See also *Shafer* v. *American Cas. Co.* (1966) 245 Cal.App.2d 1 [53 Cal.Rptr. 446]; *Miller* v. *United Ins. Co.* (1952) 113 Cal.App.2d 493, 499 [248 P.2d 113]; *Happoldt* v. *Guardian Life Ins. Co.* (1949) 90 Cal.App.2d 386, 398 [203 P.2d 55].)"

■ Our own conclusion is that while it must be conceded that "No all-inclusive definition of the word 'accident' can be given" (*Geddes & Smith,*

*Inc.* v. *St. Paul Mercury Indemnity Co.* (1959) 51 Cal.2d 558, 563 [334 P.2d 881]) and that a tautological review of the various expressions in the opinions dealing with the subject will tend to incline the analyst first to one view of the case and then to the other, what emerges as the foundation upon which disposition of the cause must rest is simply a common sense appraisal of what is by any reasonable understanding the nature of an "accident" policy of insurance. As pointed out by respondent, if it is to be held that an activity normally engaged in by an insured becomes an "accident" because the effect thereof, without more, is on a given occasion extraordinary, the term accident has, for insurance coverage purposes at least, *no meaning at all*. Put another way, if it is to be the case one may recover under an accident policy of insurance (with its correlatively reduced premium costs) for an injury which in some final analysis may be traced to what would otherwise be a commonplace act, because the injury transforms that act into an "accident," there is nothing to distinguish the accident policy from an "ordinary" or "standard" form of disability insurance policy (with its correspondingly higher premium costs).

We do not, of course, place our reasoning entirely on the basis of the economics involved nor do we fail to appreciate the tragic loss suffered by appellant. If our function were no more than to arrive at a resolution based upon the consideration whether it would be desirable that appellant be compensated, our task would be a simple one. Unfortunately, that is not the case. What must be determined is the justice of the cause in the light of the circumstances, and upon that premise we are unable to say the trial court erred, no matter which of the various rationales described is resorted to.

So, it is manifest that in *Alessandro* there was absent any "evidence of falling, slipping, overexertion, or of any external force striking the body of the appellant. . . . There was nothing outside 'the usual course of events' which happened " 'suddenly and unexpectedly without any design of the' " appellant (*Rock* v. *Travelers' Ins. Co.,* 172 Cal.462, 465 . . .) except the result, . . . ." (*Alessandro* v. *Massachusetts Cas. Ins. Co., supra,* 232 Cal.App.2d 203, 209.)

Similarly what was concerned was "a series of imperceptible events that finally culminated in a single tangible harm" and not as in *Geddes* a specific event or "a series of specific events each of which manifested itself at an identifiable time and each of which caused identifiable harm [as defined in the policy] at the time it occurred." (*Id.,* 51 Cal.2d at p. 564.)

Finally, it is not true, we think, that recovery may be had herein because the jog set in progress the events leading directly to the loss of appellant's

vision, since that activity, except for its result, was not of such a nature as properly to be characterized an "accident."

The judgment appealed from is affirmed.

Beach, J., and Gates, J., concurred.