[No. A109541. First Dist., Div. Two. Dec. 9, 2005.]

KIMBERLY GIN, Plaintiff and Appellant, v.
PENNSYLVANIA LIFE INSURANCE COMPANY, Defendant and
Respondent.

## COUNSEL

Law Offices of Joseph Scanlon and Joseph Scanlon for Plaintiff and Appellant.

Anderson, McPharlin & Conners, Richard P. Tricker and Thomas J. Kearney for Defendant and Respondent.

## OPINION

**KLINE, P. J.**—In this appeal we must determine whether benefits are due under an insurance policy that provides disability benefits for "accidental bodily injury" where the policyholder, over time, developed carpal tunnel syndrome as a result of her ordinary work activities. The superior court granted summary judgment to the insurance carrier, Pennsylvania Life Insurance Company (Penn Life), holding that appellant Kimberly Gin's disability was not the result of an "accidental bodily injury" and thus not covered under the policy. Gin now appeals from that order, contending that her disability resulted from a series of "micro-traumas," which constituted an "accidental bodily injury" as required by the policy. We conclude that Gin suffered no

"accidental bodily injury" as that term is defined in the policy and in California law. Accordingly, we affirm the grant of summary judgment to Penn Life.

FACTUAL AND PROCEDURAL BACKGROUND

In 1994, Gin went to work for United Parcel Service (UPS). She worked in UPS's accounting office and described herself as a "COD clerk." Her duties consisted largely of data entry, including inputting billings for UPS and paying out checks. She also occupied another position at UPS in which she entered payroll information. Both of these jobs required her to sit in front of a computer, and Gin estimated that she spent 40 hours per week, plus overtime, performing these duties.

On September 13, 1996, Gin applied for a disability insurance policy from Penn Life. Penn Life issued the policy effective that same date. The policy was an "accident benefit policy" and provided that Gin would receive a monthly disability benefit in the event that she became totally disabled within the meaning of the policy.[1]

The policy provided that Penn Life "will pay the Monthly Total Disability Benefit shown in the Policy Schedule on Page 3 when: (1) Injury causes Total Disability which starts within 90 days after the date of the accident and continues through the end of the Elimination Period, if any; (2) you . . . are under the Regular and Personal Care of a Physician; and (3) Total Disability starts before your . . . 65th birthday . . . ." The policy defined "Injury" as "accidental bodily injury sustained (1) directly and independently of disease or bodily infirmity, or any other causes; and (2) while this Policy is in force." The terms "Total Disability" and "Totally Disabled" were defined to mean "that you or your Covered Spouse are unable to engage in any employment or occupation for which you or your Covered Spouse, are or become qualified by reason of education, training or experience."

Gin stated that four days after being issued the policy, she began to feel pain in her right side, especially in her shoulder, arm, and neck. According to Gin's deposition testimony, she was working in the UPS accounting office when she began to experience symptoms. She recalled that she was simply typing and that there was no particular traumatic event that occurred before she felt the pain. Gin filled out an "Injury/Illness Report" that same day, and in response to the question, "What object or substance directly injured the

---

[1] The name shown on both the application for insurance and on the policy schedule is "Kimberly Sanchez." It appears that appellant changed her name to Gin at some time prior to filing the action below. Penn Life does not dispute that appellant Gin is the named insured under the policy.

employee?" she stated, "The repetition of entering data via the keyboard." She later stated that "[t]he trauma associated with my symptoms was typing."

Gin made a claim for disability benefits to Penn Life on October 10, 1996. Penn Life paid policy benefits through March 1999. Penn Life discontinued benefits on or about May 24, 1999, after Gin completed a vocational rehabilitation program she had undergone in connection with a workers compensation claim arising out of the same injury.

Gin sued Penn Life for breach of contract in the Alameda County Superior Court on March 15, 2001. After removal of the action to federal court and a stipulated remand to state court, Gin filed an amended complaint on September 22, 2003. Penn Life later moved for summary judgment on two grounds. First, it contended that Gin had not been "totally disabled" from "any occupation" within the meaning of the policy since March 1999. Second, Penn Life argued that Gin had no right to coverage because her disability was not caused by an "accidental bodily injury" as required by the policy.

In support of its motion for summary judgment, Penn Life submitted portions of the deposition of Dr. Robert Allen, an anesthesiologist and specialist in pain medicine whom Gin had begun to see in December 2001.[2] When asked his opinion as to the cause of Gin's "complex regional pain syndrome," Dr. Allen stated: "My opinion is that there is probably some component of a repetitive stress injury picture, although it's somewhat confusing, and no one has an explanation all the time as to what precipitates this neuropathic injury. But given her history of being engaged in repetitive activities, and the onset of symptoms, and clinicians giving her the diagnoses somewhat consistently of repetitive stress injury, that was my initial impression of how she could have developed this."

The superior court heard argument on Penn Life's motion for summary judgment on November 10, 2004. It accepted Penn Life's second argument and found that Gin's disability was not the result of an "accidental bodily injury" as required by the policy. The superior court held that the undisputed evidence showed that the probable cause of Gin's disability was the repetitive motion of entering data on a computer keyboard. The superior court concluded that such an injury could not be considered accidental under the standards established in California case law. It therefore granted summary judgment to Penn Life. Gin then filed a timely appeal.

---

[2] In addition to Dr. Allen's deposition testimony, Penn Life also submitted reports and correspondence from other physicians containing diagnoses of Gin's condition. Counsel for Gin objected to the admissibility of these other documents, and those objections were sustained by the superior court.

DISCUSSION

■ The question before us is whether Gin's condition falls within the policy's definition of "Injury." The superior court held that it did not because Gin's disability was attributable to a "repetitive stress injury." Citing *Williams v. Hartford Accident & Indemnity Co.* (1984) 158 Cal.App.3d 229 [204 Cal.Rptr. 453] (*Williams*) and *Alessandro v. Massachusetts Cas. Ins. Co.* (1965) 232 Cal.App.2d 203 [42 Cal.Rptr. 630] (*Alessandro*), the superior court ruled that an "[i]njury resulting from a series of imperceptible events that finally culminate in a single tangible harm is not accidental." We agree with the superior court that under California case law, a disability that is the culmination of repetitive stresses caused by the insured's normal, everyday activities is not the result of an "accidental bodily injury" and therefore does not fall within the coverage of the policy.

A. *Standard of Review*

In this case, the issue is the scope of the coverage afforded by the policy. As a consequence, the burden was on Gin "to establish that [her] disability occurred as a result of an 'accidental bodily injury' within the meaning of that term as used in the policy." (*Alessandro, supra*, 232 Cal.App.2d at p. 210; accord, *Zuckerman v. Underwriters at Lloyd's* (1954) 42 Cal.2d 460, 472 [267 P.2d 777] ["The burden of proof was upon the beneficiaries . . . to establish that the death . . . occurred as a result of 'bodily injury' within the meaning of that term as defined by the policy"]; *Spaid v. Cal-Western States Life Ins. Co.* (1982) 130 Cal.App.3d 803, 806–807 [182 Cal.Rptr. 3] [insured required to demonstrate that death "resulted from a cause and in a manner covered by the policy"].)

■ The interpretation and application of the terms of an insurance policy present questions of law, and in reviewing the superior court's grant of summary judgment, we exercise de novo review over those questions. (*County of San Diego v. Ace Property & Cas. Ins. Co.* (2005) 37 Cal.4th 406, 414 [33 Cal.Rptr.3d 583, 118 P.3d 607] (*Ace*); *Century Surety Co. v. United Pacific Ins. Co.* (2003) 109 Cal.App.4th 1246, 1254–1255 [135 Cal.Rptr.2d 879].) In so doing, we apply settled rules governing the interpretation of insurance contracts. (*Ace*, at p. 414.) Where the language of the policy is clear and explicit, it will govern. (*Foster-Gardner, Inc. v. National Union Fire Ins. Co.* (1998) 18 Cal.4th 857, 868 [77 Cal.Rptr.2d 107, 959 P.2d 265].) We therefore turn to an examination of the language of the policy to determine whether the superior court properly granted summary judgment to Penn Life.

## B. *The Meaning of "Accident" Under California Case Law*

Gin contends that her disability was the unforeseen result of the repetitive trauma of typing at a computer keyboard and that such an injury is "accidental" under California case law. In support of her argument, Gin quotes selected language from *Geddes & Smith, Inc. v. St. Paul Mercury Indemnity Co.* (1959) 51 Cal.2d 558 [334 P.2d 881] (*Geddes & Smith*), a case involving the definition of "accident" in a property insurance policy. In that case, a building contractor had purchased aluminum doors that it intended to use in the construction of houses, but all of the doors developed defects after installation and became unusable. (*Id.* at pp. 560–561, 564.) The California Supreme Court held that the loss was within the coverage of the policy, because the property damage had been caused by an "accident." (*Id.* at p. 564.) Although it had taken months for all of the doors to fail and fall apart, when each of the doors failed, it did so suddenly. (*Ibid.*)

In reaching this conclusion, Justice Traynor's opinion for the court stated: "No all-inclusive definition of the word 'accident' can be given. It has been defined 'as "a casualty—something out of the usual course of events and which happens suddenly and unexpectedly and without design of the person injured." [Citations.]' [Citation.] It ' "includes *any event which takes place without the foresight or expectation of the person acted upon or affected by the event.*" ' [Citations.] 'Accident, as a source and cause of damage to property, within the terms of an accident policy, is an unexpected, unforeseen, or undesigned happening or consequence from either a known or an unknown cause.' [Citation.]" (*Geddes & Smith, supra,* 51 Cal.2d at pp. 563–564.) Gin argues that this definition means that "an event [is] an 'accident' if it either causes injury *or* if it is the consequence of a causative occurrence." Thus, according to Gin, her disability was the unexpected, unforeseen consequence of a causative occurrence (her typing at work).

We cannot agree with Gin's argument. First, it simply ignores important limiting language in *Geddes & Smith.* Immediately following the above-quoted passage, the court noted that the events in question had "occurred suddenly." (*Geddes & Smith, supra,* 51 Cal.2d at p. 564.) It went on to state that "[i]t bears emphasis that we are concerned, *not with a series of imperceptible events that finally culminated in a single tangible harm* [citation], but with a series of specific events each of which manifested itself *at an identifiable time* and each of which caused *identifiable harm at the time it occurred.*" (*Ibid.,* italics added.) This language places Gin's injury outside of the California Supreme Court's definition of "accident," because Gin freely admits that her disability was caused by a series of imperceptible "microtraumas" from typing which finally culminated in a tangible harm. (See *Khatchatrian v. Continental Cas. Co.* (9th Cir. 2003) 332 F.3d 1227, 1228

[where stroke was caused by insured's chronic high blood pressure, injury from stroke was not an "accident" under the *Geddes & Smith* analysis].) The micro-traumas caused by the repetitive stress of typing did not each manifest themselves at an identifiable time and did not cause an identifiable harm at the time they occurred. Rather, it is undisputed that Gin's disability was the result of a series of repetitive stresses. That is, it was the result of "a series of imperceptible events that finally culminated in a single tangible harm." (*Geddes & Smith, supra,* 51 Cal.2d at p. 564.)

Second, Gin's chosen definition of injury is plainly too broad. If, as Gin contends, an event is an "accident" for the purposes of an accident benefit policy "if it either causes an injury *or* if it is the consequence of a causative occurrence," then it is difficult to imagine what would fall outside of the definition. Every event may be considered, in some sense, the "consequence of a causative occurrence." Accepting such a definition would effectively remove the word "accidental" from the phrase "accidental bodily injury." As the *Williams* court correctly pointed out, "if it is to be held that an activity normally engaged in by an insured becomes an 'accident' because the effect thereof, without more, is on a given occasion extraordinary, the term accident has, for insurance coverage purposes at least, no meaning at all." (*Williams, supra,* 158 Cal. 3d at p. 234; accord, *Nehra v. Provident Ins. Co.* (1997) 454 Mich. 110, 118 [559 N.W.2d 48, 51] [word "accidental" must include some temporal and spatial component, otherwise "the word 'accidental' adds almost nothing to the phrase 'accidental bodily injuries' "].)

■ Typing at a keyboard was an activity in which Gin normally engaged. It did not become an "accident" merely because the cumulative effect of a long period of typing was the onset of carpal tunnel syndrome. (See *Williams, supra,* 158 Cal.App.3d at pp. 234–235 [jogging was not an activity that could be characterized as "accident" even though it may have set in motion events leading to injury]; *Alessandro, supra,* 232 Cal.App.2d at p. 210 [no evidence of accidental occurrence where "injury was the end result of a long existing degenerative disease"].) Because Gin's disability was not the result of "accidental bodily injury" as that term is understood in California law, it falls outside of the coverage of the policy.[3]

---

[3] Because we conclude that California law is dispositive of the issue before us, we will not dwell at length on the out-of-state authorities cited by Gin. The Georgia Supreme Court's opinion in *Provident Life and Accident Ins. v. Hallum* (2003) 276 Ga. 147 [576 S.E.2d 849] (*Hallum*) construed a policy with a somewhat different, and perhaps broader, definition of "injury." (*Id.* at p. 850 [injury defined as " 'accidental bodily injuries occurring while your policy is in force' "].) More important, Georgia law appears inconsistent with California law in that the former does not require "a specific incident that resulted in [the insured's] condition" before the disability will be deemed the result of an "accidental bodily injury." (Compare *id.* at p. 851 with *Alessandro, supra,* 232 Cal.App.2d at pp. 208–209 ["accident" is something

### C. *Gin Presented No Triable Issue of Fact as to the Cause of Her Disability*

As we explained in the facts section of this opinion, Dr. Allen's testimony was that the cause of Gin's disability was "repetitive stress injury." Nevertheless, in her reply brief, Gin argues that the evidence in this case shows that "the subject disability was the result of trauma(s)." As factual support for this argument, she cites the report of Dr. Harish Porecha. Dr. Porecha's diagnosis was "right ulnar nerve paresthesias probably due to right elbow ulnar nerve involvement and cervical sprain/strain on the right side." Gin contends that this shows that her injury was "traumatically induced"—rather than of systemic origin—and thus the result of an accident.

But in opposing Penn Life's motion for summary judgment, counsel for Gin objected to the admission of Dr. Porecha's report, and the superior court sustained that objection. As a consequence, Gin may not rely on this report to create a triable issue of fact regarding the cause of her disability. It is well settled that "for purposes of reviewing a motion for summary judgment, we do not consider evidence 'to which objections have been made and sustained.'" (*Alexander v. Codemasters Group Limited* (2002) 104 Cal.App.4th 129, 139 [127 Cal.Rptr.2d 145], quoting *Guz v. Bechtel National, Inc.* (2000) 24 Cal.4th 317, 334 [100 Cal.Rptr.2d 352, 8 P.3d 1089].) This follows from the language of Code of Civil Procedure section 437c, subdivision (c), which states that "[i]n determining whether the papers show that there is no triable issue as to any material fact the court shall consider all of the evidence set forth in the papers, *except that to which objections have been made and sustained by the court . . . .*" (Code Civ. Proc., § 437c, subd. (c), italics added.)

Thus, even if one assumes that Dr. Porecha's report provides factual support for Gin's causation argument (a question we do not decide), neither the superior court nor this court may consider that report in determining the propriety of summary judgment. The superior court was therefore correct in concluding that "the evidence is undisputed that . . . the probable cause was [the] repetition of entering data via the keyboard." Based on the evidence before it, it did not err in granting summary judgment to Penn Life.

---

outside of the usual course of events that happens suddenly and unexpectedly and without the design of the insured].) Because of these differences of both fact and applicable law, *Hallum* is not persuasive.

Gin also relies on the opinion in *Mastroianni v. UNUM Prov. Corp., Paul Revere Life* (D.N.J. 2003) 286 F.Supp.2d 425. Although she devotes several pages of her brief to an analysis of the case, she fails to mention that the *Mastroianni* court vacated its opinion a year before Gin filed her brief in this court. (See *Mastroianni v. UNUM Provident Corp.* (D.N.J. June 23, 2004) 2004 WL 1879947 [order vacating earlier opinion].) Because the opinion is no longer good law, we will not address it further.

## DISPOSITION

The judgment is affirmed.[4]

Haerle, J., and Lambden, J., concurred.

---

[4] In light of our holding on the accidental injury issue, we need not reach the question whether Gin was "totally disabled" within the meaning of the policy.