Filed 7/11/22  Brown v. SK Baseball CA3

<u>NOT</u> <u>TO</u> <u>BE</u> <u>PUBLISHED</u>

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

# IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## THIRD APPELLATE DISTRICT

(Sacramento)

----

|  |  |
|---|---|
| ESSEX WAYNE BROWN, | C092888 |
| Plaintiff and Appellant, | (Super. Ct. No. 34201600202613) |
| v. | |
| SK BASEBALL, LLC, | |
| Defendant and Respondent. | |

Plaintiff Essex Wayne Brown worked for the Sacramento River Cats Baseball Club, LLC (River Cats) as the manager of the visiting team's clubhouse.[1]  (*Brown v. Arizona Diamondbacks* (Aug. 9, 2021, C091629) [nonpub. opn.].)  The River Cats terminated Brown's employment after two seasons.  (*Ibid.*)  Brown sued the River Cats, alleging various employment-related causes of action.  (*Ibid.*)  Brown also sued SK

---

[1] The River Cats are not a party to the present appeal.

Baseball, LLC (SK Baseball) dba the Reno Aces (among others), another team in the same league. (*Ibid.*)

The present appeal, Brown's second, concerns two causes of action against SK Baseball: (1) a cause of action for racial harassment in violation of the Fair Employment and Housing Act (FEHA) (Gov. Code, § 12940, subd. (j));[2] and (2) a cause of action for failure to prevent discrimination and harassment in violation of section 12940, subdivision (k).[3] The trial court granted SK Baseball's motion for summary adjudication on both causes of action on the ground that Brown failed to raise a triable issue of material fact as to the existence of an employment relationship with SK Baseball.[4] The trial court entered summary judgment in SK Baseball's favor.

Brown raises a number of issues, only one of which bears on the threshold issue of his employment relationship with SK Baseball. With respect to that issue, which is dispositive, Brown argues summary adjudication and summary judgment were inappropriate because triable issues of fact exist as to whether he was "a person providing services pursuant to a contract." (§ 12940, subds. (j)(1) and (j)(5).) However, Brown makes no attempt to support this argument with record evidence. Under the circumstances, we conclude Brown fails to carry his burden on appeal and affirm.

---

[2] Undesignated statutory references are to the Government Code.

[3] Brown asks that we take judicial notice of our unpublished opinion in the previous appeal. (*Brown v. Arizona Diamondbacks, supra,* C091629.) We will do so.

[4] The trial court also granted SK Baseball's motion for summary adjudication on causes of action for retaliation in violation of section 12940, subdivision (h), aiding and abetting violations of FEHA in violation of section 12940, subdivision (i), and unfair business practices in violation of Business and Professions Code section 17200, et seq. Brown does not appeal from these rulings.

## I. BACKGROUND

Brown, an African American, was hired as the visiting team clubhouse manager for the River Cats in 2014. (*Brown v. Arizona Diamondbacks, supra,* C091629.) The River Cats are a minor league baseball team and a member of the Pacific Coast League.[5] (*Ibid.*) As the visiting team clubhouse manager, Brown was responsible for maintaining and operating the clubhouse, and hosting visiting teams from the Pacific Coast League. (*Ibid.*) The Reno Aces were one such team.

The Reno Aces are affiliated with the Arizona Diamondbacks (Diamondbacks), a major league team. (*Brown v. Arizona Diamondbacks, supra,* C091629.) Joseph Metz was an athletic trainer for the Reno Aces, employed by the Diamondbacks. (*Ibid.*) The Reno Aces came to Sacramento twice during the 2014 baseball season, using the visiting clubhouse for three days in July 2014 and five days in August-September 2014. (*Ibid.*)

The second amended complaint alleges that Metz was rude and disrespectful to Brown, and refused to work with him to plan the Reno Aces' visit. (*Brown v. Arizona Diamondbacks, supra,* C091629.) According to Brown, Metz loudly complained about the clubhouse and let it be known he thought Brown was doing a bad job as manager. (*Ibid.*) The second amended complaint also alleges that Metz threatened to have Brown fired and used an egregious racial epithet against him. (*Ibid.*) Brown reported his difficulties with Metz to both the River Cats and the Diamondbacks. (*Ibid.*)

Brown was hired as the visiting clubhouse manager for the 2015 baseball season, despite his problems with Metz. (*Brown v. Arizona Diamondbacks, supra,* C091629.) The Reno Aces returned to Sacramento in June 2015, using the visiting clubhouse for four days. (*Ibid.*) On one of these days, Phil Nevin, the head coach of the Reno Aces, yelled and cursed at Brown for giving him a wrinkled shirt, saying that Brown was

---

[5] The Pacific Coast League operates in the Western, Midwestern, and Southwestern United States. (*Brown v. Arizona Diamondbacks, supra,* C091629.)

everything Metz said he was the year before.  (*Ibid.*)  Later that day, Metz upbraided Brown for failing to fill a therapeutic ice tub.  (*Ibid.*)  According to Brown, Metz then threw an ice bucket across the room, striking him in the leg.  (*Ibid.*)

During the 2015 season, a trainer for another team in the Pacific Coast League created a survey rating clubhouses and clubhouse managers in the league.  (*Brown v. Arizona Diamondbacks, supra,* C091629.)  The survey was circulated to trainers in the Pacific Coast League.  (*Ibid.*)  The River Cats' visiting clubhouse received the lowest rating in the survey.  (*Ibid.*)  The River Cats concluded the survey results reflected poorly on Brown and called into question his ability to continue as clubhouse manager.  (*Ibid.*) The River Cats terminated Brown on July 14, 2015, before the end of the season.  (*Ibid.*)

Brown brought suit against the River Cats, SK Baseball dba the Reno Aces, the Diamondbacks, and Metz.  The second amended complaint, which is the operative pleading, asserts five causes of action against SK Baseball, two of which are relevant here: (1) a cause of action for racial harassment in violation of section 12940, subdivision (j); and (2) a cause of action for failure to prevent discrimination and harassment in violation of section 12940, subdivision (k).

SK Baseball moved for summary judgment or, in the alternative, summary adjudication, arguing, inter alia, that Brown could not establish either cause of action because the undisputed facts showed he was employed by the River Cats, and not SK Baseball.  Brown opposed the motion.  As relevant here, Brown argued he was jointly employed by the River Cats and every other major league team comprising Major League Baseball (MLB), as well as their affiliated minor league teams, including the Reno Aces.[6]

---

[6] "Major League Baseball ('MLB') is an unincorporated association consisting of thirty MLB franchises, also known as clubs or teams.  Each franchise employs approximately forty baseball players on its '40-man roster,' with up to twenty-five players on its 'active roster,' who play at the major league level.  As part of the MLB's 'farm system,' each franchise also employs 150 to 250 players who compete at the minor league level.  MLB

4

The trial court rejected this argument, noting: "By [Brown's] logic, [Brown] is an employee of the New York Yankees, the Toronto Blue Jays, the Houston Astros, and the Chicago Cubs, inter alia, as well as the employee of every AAA team the River Cats play, e.g., Tacoma Rainiers, Las Vegas Aviators, Oklahoma City Dodgers, etc."[7] The trial court ruled that Brown failed to allege joint employment in the second amended complaint and failed to present evidence raising a triable issue of material fact as to the existence of an employment relationship with SK Baseball. The trial court entered summary judgment in SK Baseball's favor. This appeal timely followed.

## II. DISCUSSION

Brown argues the trial court erred in summarily adjudicating his causes of action for racial harassment in violation of section 12940, subdivision (j) and failure to prevent discrimination and harassment in violation of section 12940, subdivision (k). He advances numerous arguments, only one of which concerns the existence of an employment relationship between himself and SK Baseball.[8] With respect to that issue, on which the present appeal turns, Brown argues that triable issues of fact exist as to whether he was "a person providing services pursuant to a contract," within the meaning

franchises employ a high number of minor league players hoping that a handful will develop into major league players. Therefore, though minor league players train and play for minor league clubs, they are nonetheless employed by an MLB club." (*Miranda v. Selig* (9th Cir. 2017) 860 F.3d 1237, 1238.)

[7] "AAA" or "Triple-A" refers to a class of minor league players. (*Miranda v. Selig, supra,* 860 F.3d at p. 1239.)

[8] Brown devotes much of his briefing to arguments concerning the employment status of Metz and Nevin. He argues that Metz and Nevin were jointly employed by the Diamondbacks and SK Baseball, and that the Diamondbacks, SK Baseball, and the Reno Aces are one and the same. He also argues that neither Metz nor Nevin were independent contractors. These arguments are neither here nor there. As we shall explain, the question before us is whether *Brown* was an "employee, an applicant, or a person providing services pursuant to a contract." (§ 12940, subd. (j)(1).) We need not determine the employment status of Metz or Nevin to decide this threshold issue.

5

of section 12940, subdivision (j).  Brown does not argue that he was an employee of SK Baseball.  As we shall explain, Brown fails to meet his burden on appeal to point to evidence in the record that could support a finding that he was an independent contractor.

A.     *Standard of Review*

Summary judgment or summary adjudication is appropriate when all the papers submitted show there is no triable issue of material fact and the moving party is entitled to judgment as a matter of law.  (Code Civ. Proc., § 437c, subds. (c) & (f); *Regents of University of California v. Superior Court* (2018) 4 Cal.5th 607, 618.)  "The purpose of the law of summary judgment [or summary adjudication] is to provide courts with a mechanism to cut through the parties' pleadings in order to determine whether, despite their allegations, trial is in fact necessary to resolve their dispute." (*Aguilar v. Atlantic Richfield Co.* (2001) 25 Cal.4th 826, 843 (*Aguilar*).)

A defendant moving for summary judgment or summary adjudication has the initial burden of presenting evidence that a cause of action lacks merit because the plaintiff cannot establish an element of the cause of action or there is a complete defense. (Code Civ. Proc., § 437c, subd. (p)(2); *Aguilar, supra,* 25 Cal.4th at p. 853; *Husman v. Toyota Motor Credit Corp.* (2017) 12 Cal.App.5th 1168, 1179-1180.)  This may be done by affirmatively proving that a specified fact does not exist or by showing that the plaintiff has no evidence to prove that fact. (*Cole v. Town of Los Gatos* (2012) 205 Cal.App.4th 749, 756.)

Once the moving defendant has met their initial burden, the burden shifts to the nonmoving plaintiff to show that a triable issue of material fact exists.  (*Aguilar, supra,* 25 Cal.4th at p. 850.)  A triable issue of material fact exists if, and only if, the evidence reasonably permits the trier of fact to find the contested fact in favor of the plaintiff in accordance with the applicable standard of proof.  (*Ibid.*)

We review an order granting summary judgment de novo, applying the same three-step analysis as the trial court.  (*Aguilar, supra,* 25 Cal.4th at p. 860; *Hamburg v.*

*Wal-Mart Stores, Inc.* (2004) 116 Cal.App.4th 497, 502.)  First, we identify the issues framed by the pleadings, as those are the allegations to which the motion must respond. (*Hamburg, supra,* at p. 503.)  We next determine whether the defendant's showing establishes facts which negate the plaintiff's claims and justify a judgment in the defendant's favor.  (*Ibid.*)  If the defendant has made such a showing, we then determine whether the plaintiff has demonstrated the existence of a triable, material issue of fact. (*Ibid.*)

We view the evidence in a light favorable to the party opposing summary judgment or summary adjudication, liberally construing that party's evidence while strictly scrutinizing the moving party's showing and resolving all doubts concerning the evidence in favor of the opposing party.  (*Patterson v. Domino's Pizza, LLC* (2014) 60 Cal.4th 474, 499-500.)  We consider all of the evidence offered in connection with the motion except that which the trial court properly excluded.  (*Wilson v. 21st Century Ins. Co.* (2007) 42 Cal.4th 713, 717; *Gin v. Pennsylvania Life Ins. Co.* (2005) 134 Cal.App.4th 939, 946.)

Although our review is de novo, " 'the appellant has the burden of showing error, even if he did not bear the burden in the trial court. [Citation.] . . . "[D]e novo review does not obligate us to cull the record for the benefit of the appellant in order to attempt to uncover the requisite triable issues.  As with an appeal from any judgment, it is the appellant's responsibility to affirmatively demonstrate error and, therefore, to point out the triable issues the appellant claims are present by citation to the record and any supporting authority.  In other words, review is limited to issues which have been adequately raised and briefed." ' "  (*Bains v. Moores* (2009) 172 Cal.App.4th 445, 455.)

B.    *Applicable Statutory Background*

"The FEHA establishes a comprehensive scheme intended to protect and safeguard the right and opportunity of all persons to seek and hold employment free from prohibited discrimination and harassment."  (*Hirst v. City of Oceanside* (2015) 236 Cal.App.4th 774,

7

782 (*Hirst*); see § 12920.) " 'Under the FEHA and its predecessor statutes, freedom from employment discrimination on the grounds of race, religious creed, color, national origin, ancestry, physical disability, mental disability, medical condition, marital status, and sex is a civil right. [Citation.] Discrimination on the specified grounds is against public policy [citation] and an unlawful employment practice." (*Vernon v. State of California* (2004) 116 Cal.App.4th 114, 122-123 (*Vernon*).)

" 'The FEHA prohibits *employment* discrimination . . . ,' not discrimination or retaliation in other relationships." (*Fitzsimons v. California Emergency Physicians Medical Group* (2012) 205 Cal.App.4th 1423, 1426 (*Fitzsimons*); see also *Vernon, supra,* 116 Cal.App.4th at p. 123 ["The fundamental foundation for liability is the 'existence of an *employment* relationship between the one who discriminates against another and that other who finds himself the victim of discrimination' "].) "FEHA requires 'some connection with an employment relationship,' although the connection 'need not necessarily be direct.' " (*Vernon, supra,* at p. 123.)

Section 12940 of the FEHA proscribes certain unlawful employment practices. (*Fitzsimons, supra,* 205 Cal.App.4th at p. 1426.) As relevant here, subdivision (j)(1) prohibits harassment "because of race" and protects "an employee, an applicant, an unpaid intern or volunteer, or a person providing services pursuant to a contract." (§ 12940, subd. (j)(1).)[9] Subdivision (k) proscribes an employer's failure to "take all

_____

[9] Section 12940, subdivision (j)(1) provides in pertinent part: "It is an unlawful employment practice, unless based upon a bona fide occupational qualification, or, except where based upon applicable security regulations established by the United States or the State of California:  [¶] . . . [¶] (j)(1) For an employer, labor organization, employment agency, apprenticeship training program or any training program leading to employment, or any other person, because of race, religious creed, color, national origin, ancestry, physical disability, mental disability, medical condition, genetic information, marital status, sex, gender, gender identity, gender expression, age, sexual orientation, or veteran or military status, to harass an employee, an applicant, an unpaid intern or volunteer, or a person providing services pursuant to a contract.  Harassment of an employee, an

reasonable steps necessary to prevent discrimination and harassment from occurring." (§ 12940, subd. (k).)[10]

Subdivision (j) protects a broader class of persons than subdivision (k). (*Hirst, supra,* 236 Cal.App.4th at p. 782 ["Although the FEHA generally protects only 'employees' and 'applicants,' the provisions prohibiting harassment contained in section 12940, subdivision (j) are intentionally broader"]; see also *Fitzsimons, supra,* 205 Cal.App.4th at p. 1430 [explaining that section 12940's harassment provision was amended in 1999 to " 'expand[] the reach of the state's harassment (but not discrimination) protections by including contract workers within FEHA's coverage' "].) While subdivision (j) protects independent contractors, subdivision (k) does not. (§ 12490, subds. (j)(1) & (k); see also *Sistare-Meyer v. Young Men's Christian Assn.* (1997) 58 Cal.App.4th 10, 17 [FEHA's antidiscrimination provisions do not apply to independent contractors].)

Brown does not argue he was a direct employee of SK Baseball or the Reno Aces. Instead, he argues he was "a person providing services pursuant to a contract." However, section 12940, subdivision (k) does not apply to independent contractors. Because section 12940, subdivision (k) does not apply to independent contractors, and Brown

---

applicant, an unpaid intern or volunteer, or a person providing services pursuant to a contract by an employee, other than an agent or supervisor, shall be unlawful if the entity, or its agents or supervisors, knows or should have known of this conduct and fails to take immediate and appropriate corrective action. An employer may also be responsible for the acts of nonemployees, with respect to harassment of employees, applicants, unpaid inters or volunteers, or persons providing services pursuant to a contract in the workplace, if the employer, or its agents or supervisors, knows or should have known of the conduct and fails to take immediate and appropriate corrective action."

[10] Section 12940, subdivision (k) provides: "It is an unlawful employment practice. . . [¶] . . . [¶] (k) For an employer, labor organization, employment agency, apprenticeship training program, or any training program leading to employment, to fail to take all reasonable steps necessary to prevent discrimination and harassment from occurring."

does not suggest he had any other employment relationship with SK Baseball, we conclude no error has been shown, and summary adjudication was properly granted with respect to that cause of action. (See *Abdulkadhim v. Wu* (2020) 53 Cal.App.5th 298, 301 [" ' "[I]t is the appellant's responsibility to affirmatively demonstrate error and, therefore, to point out the triable issues the appellant claims are present by citation to the record and any supporting authority. In other words, review is limited to issues which have been adequately raised and briefed" ' "].)

Having dispatched the cause of action for violations of section 12940, subdivision (k), we are left with a single cause for violations of section 12940, subdivision (j)(1). Brown's standing to assert a cause of action for violations of section 12940, subdivision (j)(1) depends upon whether he was "a person providing services [to SK Baseball] pursuant to a contract." Subdivision (j)(5) defines "a person providing services pursuant to a contract" as "a person who meets all of the following criteria: [¶] (A) The person has the right to control the performance of the contract for services and discretion as to the manner of performance. [¶] (B) The person is customarily engaged in an independently established business. [¶] (C) The person has control over the time and place the work is performed, supplies the tools and instruments used in the work, and performs work that requires a particular skill not ordinarily used in the course of the employer's work." (§ 12940, subd. (j)(5).)

"A 'person' is defined to include 'one or more individuals, partnerships, associations, corporations, limited liability companies, legal representatives, trustees in bankruptcy, and receivers or other fiduciaries.' (§ 12925, subd. (d).)" (*Hirst, supra,* 236 Cal.App.4th at p. 784.) An employer may also be liable for harassment committed by "nonemployees" on "employees, applicants, or persons providing services pursuant to a contract in the workplace" if "the employer, or its agents or supervisors, knows or should have known of the conduct and fails to take immediate and appropriate corrective action." (§ 12940, subd. (j)(1); *Hirst, supra,* at p. 784.) "However, '[i]n reviewing cases

10

involving the acts of nonemployees, the extent of the employer's control and any other legal responsibility that the employer may have with respect to the conduct of those nonemployees shall be considered.' " (*Hirst, supra,* at p. 784.) We consider whether the evidence raises a triable issue of material fact as to Brown's status as an independent contractor in the next section of this opinion.

## C.     *Brown's Status as an Independent Contractor*

The second amended complaint alleges Brown was employed by the River Cats. The second amended complaint also alleges Brown was "a person providing services pursuant to a contract," but does not specifically allege he provided services to SK Baseball or the Reno Aces. We conclude the allegations of the second amended complaint, broadly construed, encompass Brown's theory that he was "a person providing services [to SK Baseball] pursuant to a contract" under section 12940, subdivision (j)(1). (*Cavalry SPV I, LLC v. Watkins* (2019) 36 Cal.App.5th 1070, 1084 [new factual issue may be presented in connection with motion for summary judgment so long as the theory is encompassed by the controlling pleading, construed broadly].)

In moving for summary adjudication, SK Baseball presented evidence that Brown was directly employed by the River Cats, and not SK Baseball. SK Baseball presented a declaration from a manager averring that Brown had never been employed by that organization. SK Baseball also presented deposition testimony in which Brown asserted he received paychecks from the River Cats, and was not familiar with SK Baseball. SK Baseball's evidence was sufficient for a trier of fact to find that Brown was not an employee or person providing services to SK Baseball pursuant to a contract, and could not pursue a cause of action against SK Baseball under section 12940, subdivision (j)(1). (*Cole v. Town of Los Gatos, supra,* 205 Cal.App.4th at p. 756.) The burden thus shifted to Brown to produce evidence that he was an employee or person providing services to SK Baseball. (*Ibid.*)

11

In opposing the motion, Brown admitted he was employed by the River Cats but argued they were not his only employer. (See generally *Riley v. Southwest Marine, Inc.* (1988) 203 Cal.App.3d 1242, 1247 [a two-employer situation may be created "when an employer lends an employee to another employer and relinquishes to the borrowing employer all right of control over the employee's activities"].) As noted, Brown previously argued he was employed by each of the major league teams comprising Major League Baseball (MLB), and their affiliated minor league teams, including the Reno Aces. Brown does not renew this argument on appeal. He instead argues he was "a person providing services pursuant to a contract." Although not entirely clear, Brown appears to argue he acquired the status of independent contractor by working for the River Cats, which were themselves, he suggests, "a person providing services pursuant to a contract." (§ 12940, subd. (j)(1).) This argument, whatever its theoretical merits, is not supported by the record.

It is true, as Brown observes, that section 12940, subdivision (j)(1) does not require "a person providing services pursuant to *a* contract" be *the* contracting party. (§ 12940, subd. (j)(1), emphasis added; see also *Hirst, supra,* 236 Cal.App.4th at p. 787 [§ 12940, subd. (j)(1) "does not require the protected person to be *the* contracting party"].) But Brown does not tell us anything about any alleged contract, and the record does not support the existence of a contract for services between Brown or the River Cats, on the one hand, and the Reno Aces or SK Baseball, on the other. Nor does the record support Brown's attempt to meet the statutory definition of an independent contractor. (§ 12940, subd. (j)(5).)

As noted, section 12940, subdivision (j)(5) defines "a person providing services pursuant to a contract" as one who: (1) "has the right to control the performance of the contract for services and discretion as to the manner of performance"; (2) "is customarily engaged in an independently established business"; and (3) "has control over the time and place the work is performed, supplies the tools and instruments used in the work, and

performs work that requires a particular skill not ordinarily used in the course of the employer's work." (§ 12940, subd. (j)(5)(A)-(C).) Though Brown pays lip service to these requirements, he offers no record evidence raising a triable issue of fact as to any of them.

Brown argues without citation to the record that: (1) "he and/or the River Cats provided, equipped and maintained the clubhouse"; (2) the River Cats paid his wages and benefits; and (3) "managing the clubhouse and caring for the players required a set of hospitality skills different than playing the game of baseball." Relying on the allegations of the second amended complaint, Brown also argues he "worked the hours necessary to get the job done while the visiting teams were present at Raley Field." These unsupported arguments and allegations do not demonstrate error, and do not raise a triable issue of material fact as to Brown's—or the River Cats'—status as an independent contractor.

A fundamental rule of appellate review is that an appealed judgment is presumed to be correct, and error must be affirmatively shown. (*Denham v. Superior Court* (1970) 2 Cal.3d 557, 564.) To meet this burden in an appeal from a summary judgment, the appellant must cite to evidence in the record that shows the existence of a triable issue of fact. (*Bains v. Moores, supra,* 172 Cal.App.4th at p. 455; *Hodjat v. State Farm Mutual Automobile Ins. Co.* (2012) 211 Cal.App.4th 1, 10 ["It is an appellant's duty to direct the court to evidence that supports his arguments"].) Brown has failed to meet his burden here. Because he fails to demonstrate error with respect to the threshold issue of standing, we have no occasion to consider his other arguments.

## III.  DISPOSITION

The judgment is affirmed.  Respondent SK Baseball, LLC dba the Reno Aces is entitled to recover its costs on appeal.  (Cal. Rules of Court, rule 8.278(a)(1) & (2).)

/S/

---

RENNER, J.


We concur:

/S/

---

HULL, Acting P. J.

/S/

---

MAURO, J.